[Civ. No. 3574.  Third Appellate District.—February 12, 1929.]

W. S. CAMPBELL, Appellant, v. W. TYLER SMITH, Respondent.

Joseph Scott and A. G. Ritter for Appellant.

Bordwell, Mathews & Wadsworth, Odell S. McConnell, Ray W. Bruce and John H. Mathews for Respondent.

FINCH, P. J.—This is an action to recover personal property, consisting of automobile tires and tubes, in which action the plaintiff claims the delivery of the property and it was given into his possession prior to the trial. The case was tried before a jury, which returned a verdict in favor of the defendant for the return of the property and fixed its value at $30,000. Judgment was entered accordingly and the plaintiff has appealed. The plaintiff is the assignee and agent of the Falls Rubber Company, which will be referred to herein as the company.

By the terms of a consignment agreement between the company, as party of the first part, and the defendant, as party of the second part, dated September 28, 1922, the latter became the *del credere* agent, or factor, of the former in Los Angeles and surrounding territory "solely for the sale on commission of the consigned tires and tubes of its manufacture." Some of the terms of the agreement are as follows:

"(4) That said party of the first part agrees to furnish and consign to the party of the second part . . . such tires and tubes as in the opinion of the party of the first part will meet the requirements of the trade of the party of the second part, . . . not exceeding $25,000 in value at list price, such tires and tubes so furnished and consigned to be and remain the property of the party of the first part, and subject to its control until sold by the party of the second part in the regular course of business upon the terms and conditions set forth in the aforesaid schedule of prices, terms and conditions.

"(5) That party of the first part will allow to party of the second part by way of reimbursement . . . and as commission . . . all the surplus amounts realized from said sales, over and above the net amounts specified in the aforesaid schedule of prices, terms and conditions.

"(6) In consideration whereof the party of the second part hereby promises and agrees: . . .

"(10) To make all sales and deliveries from the stock of the said consigned tires and tubes for the account of the party of the first part. . . .

"(17) To guarantee and does hereby guarantee payment for all goods sold from said consigned stock of tires and tubes and guarantee the credit of all persons to whom said sales are made, and to accept the aforesaid commission as consideration therefor. . . .

"(20) It is mutually agreed by and between the parties hereto, on the consideration aforesaid: . . .

"(26) That the party of the first part shall have the right at any and all times to enter in or upon the premises where said tires and tubes are, to inventory, audit, and examine said tires and tubes, and to remove the same if it so desires. . . .

"(29) Upon failure of either party to comply with and perform all of the terms and provisions of this contract on the part of either party to be performed, the same shall at once terminate; and either party may terminate this contract at any time by giving to the other party sixty days notice of its intention so to do.

"(30) That this contract is to be in full force and effect for a period of ten years unless sooner terminated by the acts of the parties as herein provided.

"(31) That the full and entire agreement between the parties hereto is contained in this writing and supersedes all previous contracts between said parties."

The company made large shipments of tires and tubes to the defendant and as he sold them he made weekly reports to the company. Commencing in February, 1924, he sent with the reports his trade acceptances in payment of goods sold. In June, 1924, he had on hand under consignment from the plaintiff a stock of tires and tubes of the estimated value of about $18,000. At that time he gave the company trade acceptances in the total amount of $18,000, payable as follows: July 18, $3,000; August 22, $3,000; September 15, $6,000; September 30, $6,000. The defendant testified that the company's representative told him to sign these trade acceptances "to take care of the inventory on the floor. . . . I told him that I doubted whether I could make payments on those. 'Well,' he says, 'If you can't, . . . give us plenty of time and we will send you a check from the factory.' . . . I paid $9,000 out of the $18,000. . . . Q. That money came from the sales of stock on the floor, did it? A. Yes. Q. And the other nine thousand they sent money

enough to pay, is that correct? A. Yes, sir." The defendant pledged tires of the value of $3,000 to secure the repayment of money which he borrowed. He did not inform the company that he had pledged them. He testified that by giving these trade acceptances he considered that he became the owner of the tires and tubes in stock, although he did not so state "to anybody at that time." The trade acceptances contained the following: "The obligation of the acceptor hereby arises out of the purchase of the goods from the drawer." After giving these trade acceptances, the defendant received other tires and tubes from the company on consignment. Half or more of the tires and tubes in stock in June, 1924, and of which defendant contends he became the owner, were sold by him before this suit was commenced. A witness for the plaintiff testified that he "checked over the records and . . . found there were 99 tires left in December that were on hand about June 8th" and that their wholesale value was the sum of $1,500. This specific testimony was not contradicted except by the defendant's general estimates. Witnesses testified that the market values of tires and tubes were greater at the time of the trial than in December, 1924, but there is no evidence to support the finding of the jury that property taken in this action by the plaintiff, to which the defendant had any plausible claim of ownership, was of a value even approaching $30,000.

December 10, 1924, the tires and tubes in defendant's possession were taken under a writ of attachment in a suit brought against him by a former partner, and the sheriff took possession of the defendant's place of business and closed it. Two days later this action was commenced.

Both parties allege ownership of the property and right to the possession thereof. Respondent contends that the complaint does not state a cause of action, but it does not appear upon what theory the judgment in favor of the defendant can be affirmed on the mere ground that the complaint is insufficient. The defendant interposed a general demurrer to the complaint, which was overruled, and the case was tried on the theory that the complaint states a cause of action. The complaint appears to be sufficient as against a general demurrer.

694

■ Respondent contends that "whether or not the execution and delivery of such trade acceptances constituted payment for said tires and tubes is a question of fact . . . for determination by the jury." This may be conceded in so far as applicable to the stock on hand when the trade acceptances in the sum of $18,000 were given, but there is no logical theory upon which the defendant can claim ownership of the tires and tubes subsequently consigned to him. Respondent does not contend that the original agreement between the company and himself was terminated or abandoned. At the trial his counsel said: "We do not think that the agreement was canceled, but we take the position it was modified." The only modification claimed in respondent's brief to have been made, which is material in this case, is that by giving the trade acceptances in June, 1924, he became the owner of the tires and tubes then in his possession.

This action and two others, in both of which W. P. Cline, who was an agent and assignee of the company, was plaintiff and respondent herein was defendant, all growing out of the transactions between the company and the defendant, were tried together, before the same jury. ■ Appellant contends that the court erred in giving the following instructions in this case:

"If you believe from the evidence that no demand was made by W. S. Campbell for the possession of the property before he commenced the action in replevin on December 12, 1924, then, in that action, you must bring in your verdict for the defendant.

"You are instructed that if at the time of the filing by plaintiff of said actions in claim and delivery, defendant had the right to the possession of the property described in the complaint, then you are instructed to bring in a verdict in favor of defendant in each of said claim and delivery actions for the return of said property to defendant or for the value thereof as of the present date."

Both of these instructions are prejudicially erroneous. The defendant having set up ownership of the property and right of possession in himself, proof of demand before action was unnecessary. (*Drinkhouse* v. *Van Ness*, 202 Cal. 359, 373 [260 Pac. 896].) ■ The second instruction quoted is erroneous for several reasons. At most, the defendant owned

only a part of the property. It was a question of fact for the jury whether he was the owner of that part. If he had only a special interest in the property which entitled him to the possession thereof, then the verdict should have been for the return of the property or for the value of such special interest, not the whole value of the property.

"As a general rule, although the factor has possession of the goods consigned, and is a *del credere* factor, until the goods are sold by him to a *bona fide* purchaser the general title to or property in the goods remains in the principal, and he has the right to direct and control their sale or disposition; and unless there is a special contract in regard to returning the goods, the principal may repossess himself of the goods at any time before sale on payment of his indebtedness to the factor." (25 C. J. 377; 11 R. C. L. 758; Mechem on Agency, 2d ed., sec. 2561.) The agreement in this case expressly provides that title and ownership of the property shall remain in the company, with the right "to remove the same if it so desires." ██ The defendant had a general lien on the property in his possession on consignment for all that was due him from the company. (Civ. Code, sec. 3053.) If the company was indebted to the defendant he was entitled to the return of the property or the amount of the indebtedness, in case delivery could not be had, and damages for the detention. Respondent relies on *Riverside Portland Cement Co.* v. *Taft*, 192 Cal. 643, 648 [221 Pac. 357, 359], in which case it is said: "The general rule in this state is well settled that the respondent was entitled to have all of the attached property taken under the replevin bond returned, and if it cannot be returned, then to have a judgment for the value of the whole. Only the right of possession is involved in the replevin action." The replevin action referred to was a suit by a third-party claimant of attached property, who "gave a claim and delivery bond and took the property into his possession," against the sheriff who had levied on it, and in which action judgment went against such claimant. The sheriff, of course, was not the general owner of the property, but he was "responsible over to the owner for the excess in value of the property above the judgment and costs" in the attachment suit. (*Loosemore* v. *Baker*, 175 Cal. 420, 422 [166 Pac. 26, 27].) In such a replevin action "only the right of possession is

involved," but where the alleged right of possession is based on ownership it is necessary to prove either a general or special property in the subject matter of the suit. (*Young* v. *Matthew Turner Co.*, 168 Cal. 671, 676 [143 Pac. 1029].) "Where, in an action of replevin by the general owner of property against one who has a special interest therein, the property has been delivered to the plaintiff, the true value to be assessed and recovered by the defendant—where the suit goes in his favor—is the value of his special or limited interest in the goods recovered." (*Pico* v. *Martinez*, 55 Cal. 148; *Keiser* v. *Levering*, 29 Cal. App. 41, 44 [154 Pac. 281]; *Griffith* v. *Reddick*, 41 Cal. App. 458, 461 [182 Pac. 984]; *Connell* v. *Hogg*, 181 Cal. 730, 731 [186 Pac. 134]; *Wilkerson* v. *Thorp*, 128 Cal. 221, 226 [60 Pac. 679]; *Bibb* v. *United Grocery Co.*, 73 Fla. 589 [74 South. 880]; 34 Cyc. 1568; Cobbey on Replevin, 2d ed., sec. 971; Wells on Replevin, 2d ed., sec. 584.) The same rule is applied in actions for conversion. (*Corey* v. *Struve*, 170 Cal. 170, 173 [149 Pac. 48]; *Conolley* y. *Power*, 70 Cal. App. 70, 76 [232 Pac. 744].) In *California C. F. Assn.* v. *Ainsworth*, 134 Cal. 461, 464 [66 Pac. 586, 587], it is said that if the owner of a special or limited interest in property should recover from the general owner thereof its full value, he would hold the excess above the value of his special interest for the use of the other party and be immediately liable therefor, and, "to avoid circuity of action, it is the policy of the law that the rights of both parties shall be settled in one suit."

It is not probable that the other errors of which appellant complains will be repeated at the retrial of the action, they being covered in a general way by what has been said herein, and a specific discussion thereof is not deemed necessary.

The judgment is reversed.

Plummer, J., concurred.