[Civ. No. 2798. Third Appellate District.—December 2, 1924.]

# E. D. CONOLLEY, Respondent, v. NEWT POWER, Appellant.

[1] PARTNERSHIP—LEASE—AUTHORITY OF ONE PARTNER TO SURRENDER RIGHTS.—Where certain lands, livestock, and machinery are leased to a general partnership for a term of years, and such lease provides in effect that at the termination thereof the lessor and the lessees shall be the owners as tenants in common of the natural increase of the livestock, a member of the partnership, as such, has no authority to voluntarily convey or surrender to the lessor any title which the lessees may have in the natural increase of the livestock.

[2] LEASES—LEVY OF ATTACHMENT UPON LESSEES' INTEREST—TIME— RIGHTS OF LESSOR UNAFFECTED.—Whether the notice of intention to terminate the lease, because of a breach of the terms thereof by

the lessees, was given by the lessor prior or subsequent to the levy by a creditor of the lessees of an attachment against the increase of the livestock was immaterial, as the attaching creditor could not, by levying the attachment, destroy the lessor's right to terminate the lease on account of a breach of the terms thereof or acquire any greater rights than the lessees had at the time of the levy.

[3] ID.—BREACH—FORFEITURE OF LESSEES' RIGHTS—CONSTRUCTION OF CONTRACT. — Where a lease of certain lands, livestock, and machinery provides in effect that at the termination thereof the lessor and the lessee shall be the owners as tenants in common of the natural increase of the livestock, the further provision in such lease that "in the event of a breach of the terms thereof the "lease shall terminate and expire at the option of the lessor, and all rights hereunder shall be forfeited," will not be construed as providing for a forfeiture of the lessees' acquired title to the natural increase of the livestock, in the event of a breach of the terms of the lease and the exercise by the lessor of his option to terminate the lease.

[4] ID.—OWNERSHIP OF INCREASE OF LIVESTOCK—CONSTRUCTION OF LEASE—TENANCY IN COMMON.—Where a lease of certain lands, livestock, and machinery for a term of years provides that the "lessor leases to the lessees cows and hogs now on said premises and, as rental therefor, the lessees agree to pay to the lessor, fifty per cent of the gross returns received from said cows and hogs," and such lease further provides that the natural increase "shall be divided equally between the parties hereto, at the termination of the lease," it reasonably appears that the lessor and the lessees are to own that part of the increase on hand at such termination as tenants in common.

[5] ID.—LEVY UPON PROPERTY OWNED BY TENANTS IN COMMON—CONVERSION.—A sheriff by merely taking possession under a writ of attachment, of personal property owned by the attachment debtors and another person as tenants in common is not guilty of conversion of said other person's share of the property. Such sheriff, however, has no authority to make partition of the property of said tenants in common, but he should sell only the undivided interest of the attachment debtors therein.

[6] ID.—CONVERSION OF UNDIVIDED INTEREST OF TENANT IN COMMON—MEASURE OF DAMAGES.—Where a sheriff levies upon and takes possession of personal property owned by attachment debtors and another person as tenants in common, partitions the same between the joint owners, and sells the portion thereof allotted by him to

<hr />

5.   See 7 R. C. L. 875; 7 Cal. Jur. 361.

the attachment debtors, said other person is not entitled to recover the full value of the property sold, but only the value of his interest therein.

---

(1) 30 Cyc., p. 495, n. 30.    (2) 6 C. J., p. 207, n. 90.    (3) 35 C. J., p. 1063, n. 45.    (4) 38 Cyc., p. 12, n. 37.    (5) 6 C. J., p. 208, n. 99, 3.    (6) 38 Cyc., p. 117, n. 61.

APPEAL from a judgment of the Superior Court of Glenn County. Walter E. Herzinger, Judge. Reversed.

The facts are stated in the opinion of the court.

H. W. McGowan for Appellant.

Carroll Byrd and Duard F. Geis for Respondent.

FINCH, P. J.—Plaintiff leased to "R. O. Payton, J. A. Payton, J. H. Payton and J. B. Payton, as co-partners doing business under the firm name and style of Payton Bros.," for a term of three years from the first day of September, 1921, certain lands, livestock, and machinery. The terms of the lease material to the determination of this appeal are as follows:

"The lessor leases to the lessees cows and hogs on said premises and, as rental therefor, the lessees agree to pay to the lessor fifty per cent of the gross returns received from said cows and hogs. Settlement to be made on the first day of each month and a statement rendered showing the gross profits for the preceding month.

"The foundation herds are to be kept intact by the lessees and any loss from the foundation herds shall be replaced from the increase by animals to be selected by the lessor. . . .

"All of the natural increase, after making replacements to the foundation herds, shall be divided equally between the parties at the termination of the lease. . . .

"It is expressly understood, stipulated and agreed, that all of the terms, promises, agreements and provisions of this lease are express conditions, and not mere covenants, and upon the breach or failure of the lessees to carry out any of the same, this lease shall terminate and expire at the option of the lessor, and all rights hereunder shall be forfeited, and the said lessees are to immediately deliver up peaceful possession to the lessor.

"Time and punctuality are material to, and are of the very essence of this agreement, and of every part or portion thereof, to which the element of time and punctuality are applicable."

The lessees went into possession, but from the beginning they failed to carry out the terms of the lease in material respects, so that at all times thereafter the plaintiff could have exercised his option to terminate it. On the sixteenth day of December, 1922, the defendant, in his official capacity as sheriff, took possession of all the increase of the aforesaid livestock under a writ of attachment issued in an action against the lessees, prosecuted by one of their creditors. Prior to the levy of the writ of attachment, in a conversation between one of the lessees and the attorney for plaintiff, the other lessees not being present and it not appearing that such lessee was authorized to represent them in the matter, it was orally agreed "that the lease was to be canceled . . . without any foreclosure." This copartner testified: "There was nothing said about leaving the ranch at that time I don't think, but we were discussing the terms of the lease, as to whether it was possible to go ahead with the terms of the lease. Q. You merely discussed possibilities as to whether you could farm it or couldn't farm it? A. No, we decided we couldn't, and it was impossible for us to go ahead with the lease. Q. You decided you would give up the lease? A. I would peaceably deliver up the lease and not cause any expense. Q. Was any date set for·doing that. A. No, sir. Q. You heard nothing further of it until the Ingrams came? A. I received a letter from Mr. Conolley. I don't know the date, asking possession of the ranch. I couldn't tell you the date. Q. You delivered possession when the Ingrams came, did you? You let them take care of the premises and delivered it to them? A. Yes. Q. Now, did you have some kind of a settlement in February? A. No, no settlement with the exception of the division of our personal property which was mixed up on the ranch." The personal property referred to in the last answer had been taken to the ranch by the lessees and was not any part of the increase of the livestock. The Ingrams referred to had been employed by the plaintiff to take possession of the property and they took possession of all thereof, except that under attachment, on the nineteenth day of December, 1922. Judg-

ment was rendered against the lessees in the attachment suit and execution was issued thereon and, according to the allegations of the complaint herein, "while said lessees were in possession of the foundation herds of livestock, . . . and the increase thereof," the defendant levied upon such increase "pursuant to said writ." The defendant thereafter, on the fifth day of January, 1923, divided such increase into what he considered to be two equal parts and determined, "by the flipping or tossing of a coin," which part belonged to the lessees. He thereupon sold at public auction that part of the increase which the goddess of chance gave to the lessees and this action is for the recovery of the value thereof. Prior to the sale the plaintiff demanded possession of the property from the defendant, but the latter refused to surrender possession thereof.

The court found, among other things, that the plaintiff canceled the lease prior to the levy of the writ of attachment; that at that time the lessees "had actual notice and knowledge of the election of the lessor . . . to cancel and terminate said lease"; that "the lessees agreed to, and acquiesced in, the cancellation of said lease"; and that subsequent to the levy of the writ of attachment and prior to the levy of the writ of execution the plaintiff "took actual possession of all of the real and personal property mentioned and described in the said lease . . . save and except the attached personal property." Judgment was entered in favor of plaintiff for the sum of $1,500, found by the court to be the value of the property sold by defendant.

[1] There is no evidence showing that the lessees at any time voluntarily conveyed or surrendered to plaintiff any title which they may have had in the increase described in the complaint. The conversation between one of the partners and the attorney for the plaintiff did not constitute a surrender or an agreement to surrender such title. Neither was it within the authority of such partner to surrender the rights of the partnership in the property. "Every general partner . . . has authority to do whatever is necessary to carry on such business in the ordinary manner." (Civ. Code, sec. 2429.) "A partner, as such, has not authority to do any of the following acts, unless his copartners have wholly abandoned the business to him, or are incapable of acting: 1. To make an assignment of the partnership prop-

erty or any portion thereof to a creditor; . . . 4. To do any act which would make it impossible to carry on the ordinary business of the partnership; . . . 7. To do any other act not within the scope of the preceding section." (Civ. Code, sec. 2430.)

[2] Conceding that the plaintiff notified one of the partners of his election to terminate the lease and that such notice was sufficient as to the other partners, the evidence does not show whether the notice was given before or after the levy of the attachment. It is immaterial, however, whether it was before or after the attachment, because a creditor of the lessees could not, by levying an attachment, destroy plaintiffs' right to terminate the lease on account of a breach of the terms thereof. The attaching creditor acquired no greater rights than the lessees had at the time of the levy. It becomes important then to determine what were the rights of the lessees upon the termination by the lessor of the lease.

[3] The lease does not provide for a division of the increase of the cows and hogs at the end of the term merely, but "at the termination of the lease." Neither does it provide for the forfeiture of title to any property acquired under the lease, through the natural increase of the foundation herd or otherwise, but only that, in the event of a breach of the terms thereof, the "lease shall terminate and expire at the option of the lessor, and all rights hereunder shall be forfeited." "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (Civ. Code, sec. 1442.) "The rule that a forfeiture clause is to be strictly construed means simply that no wider scope is to be given to the language employed than is plainly required." (*In re Kitchen,* 192 Cal. 384, 389 [30 A. L. R. 1008, 220 Pac. 301].) "A forfeiture can never take place by implication, but must be effected by express, unambiguous language." (*Cullen* v. *Sprigg,* 83 Cal. 56, 64 [23 Pac. 222].) There certainly is no express language in the lease providing for the forfeiture of the lessees' title to any property acquired by them in their management of the business contemplated by the parties. The next question is whether the lessees acquired title to the natural increase of the livestock, or to any part thereof.

[4] The lease provides: "The lessor leases to the lessees cows and hogs now on said premises and, as *rental* therefor, the lessees agree to *pay* to the lessor, fifty per cent of the gross returns received from said cows and hogs." This covenant constitutes a hiring of such livestock and contemplates that the gross returns therefrom were intended to be the property of the lessees, because they could not *pay* the lessor by delivering to him property which already belonged to him. Naturally, some of the increase of the hogs would be sold during the three-year term. Other returns, as shown by the evidence, were to come from the sale of cream, in the form of monthly cream checks. "The products of a thing hired, during the hiring, belong to the hirer." (Civ. Code, sec. 1926.) "According to general principles of law, where an animal is hired for a limited period and has increase during the term, the increase belongs, not to the general owner, but to the person who by hiring for a time, becomes temporary proprietor of the animal." (1 R. C. L. 1074. See, also, note, 14 Ann. Cas. 338.) This is particularly true where the hiring is for such length of term that the parties must have contemplated that there would be increase from the animal hired. Of course, the parties may agree that the increase shall belong to the one or the other, or to both in any proportion stipulated. From the covenant that the natural increase "shall be divided equally between the parties hereto, at the termination of the lease," it reasonably appears that they were to own that part of the increase on hand at such termination as tenants in common. (*Rohrer* v. *Babcock*, 126 Cal. 222 [58 Pac. 537]; *Curtner* v. *Lyndon*, 128 Cal. 35 [60 Pac. 462].)

[5] The defendant was not guilty of conversion of the plaintiff's share of the personal property by the mere taking possession thereof. He had no authority, however, to make partition of the property of the tenants in common, but he should have sold only the undivided interest of the lessees therein. (*Veach* v. *Adams*, 51 Cal. 609.) [6] The plaintiff is not entitled, however, to recover the full value of the property sold, but only the value of his interest therein. In other words, he is entitled to whatever damages he may have suffered from the unlawful acts of the defendant. (*Treadwell* v. *Davis*, 34 Cal. 601 [94 Am. Dec. 770]; *Carrie* v. *Cloverdale etc. Co.*, 90 Cal. 84 [27 Pac. 58]; *California*

*C. F. Assn.* v. *Ainsworth,* 134 Cal. 461 [134 Pac. 461].) The evidence shows the loss of one cow out of the foundation herd. The plaintiff had the right to select an animal from the increase, to replace the one lost, before any division was made of such increase. He was the owner of an undivided half of the remainder. If the animals sold by the defendant were of greater value than plaintiff's undivided half interest, after replacement of the animal lost, then the plaintiff is entitled to recover such sum as will compensate him for the damages sustained. The other contentions of appellant are without merit.

The judgment is reversed.

Hart, J., and Plummer, J., concurred.