MITZI S. BRIGGS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7550–76.      Filed July 9, 1979.

*Lawrence A. Aufmuth* and *Arthur C. Rinsky,* for the petitioner.
*Joyce E. Britt,* for the respondent.

HALL, *Judge:* Respondent determined deficiencies in petitioner's income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1968 | $74,040 |
| 1970 | 188,824 |
| 1971 | 63,883 |

Due to concessions by petitioner, the issues remaining are:
(1) Whether petitioner is entitled to a charitable contribution deduction in 1970 for property transferred to A Nation In One Foundation, Inc.

(2) If petitioner is entitled to a charitable contribution deduction, we must decide:

(a) the value of the gift; and

(b) whether A Nation In One Foundation, Inc., was a private foundation, a private operating foundation, or a public charity for purposes of determining the limitations applicable to the computation of the charitable deduction.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Mitzi S. Briggs (petitioner) was a resident of Atherton, Calif., when she filed her petition.

Petitioner is a wealthy woman who regularly made substantial charitable gifts. During the early part of 1970, petitioner became aware of the occupation of Alcatraz Island in San Francisco Bay by a group of native American Indians who desired to establish a cultural, educational, and medical center (the center) for all native American Indians and Alaskan natives (native Americans). Petitioner was concerned about the growing militancy of the group; she wished to aid the native Americans in their efforts to establish the center, but through nonmilitant means.

In June 1970, petitioner was introduced to Clara B. Seele (Clara), a Cherokee Indian who was born on the Cherokee Indian Reservation in Tulsa, Okla. Clara is a nonmilitant, religious person who held the position of medicine woman in her tribe. At the time she met petitioner, Clara resided in California. Clara was also interested in establishing the center.

Petitioner and Clara subsequently met with representatives from Stanford University in an attempt to interest the university in donating land for the center. However, the university would only consider a land lease. Due to restrictions on its property, the university estimated it would take 12 to 18 months of study and investigation to act on petitioner's request. Because a gift from the university appeared extremely doubtful, petitioner decided to donate 184 acres of her own property—the Mount Hamilton Ranch (the ranch).

On July 31, 1970, petitioner met with Clara and a group of other native Americans who wished to establish the center. Petitioner told them that if a foundation were formed she would

donate to it land on which the center could be built. The others at the meeting did not know what a foundation was or why one had to be formed. Petitioner explained that a foundation had to be formed if the group expected to raise contributions for construction of the center.

Petitioner subsequently chose Clara to be in charge of this gift. Petitioner was aware, however, that others interested in establishing the center resented Clara's position of power. Petitioner was also aware that there was a tremendous amount of disunity at this time among the various factions of native Americans.

On August 12, 1970, petitioner executed a deed conveying the ranch to "A Nation In One." In spite of the absolute nature of this deed, it was intended by the parties to be subject to the conditions subsequent embodied in the agreement dated September 10, 1970, set forth below. This deed was recorded on August 17, 1970. It was later discovered that "A Nation In One Foundation, Inc." (ANIOFI) should have been named as grantee. Consequently, on September 9, 1970, A Nation In One deeded the property back to petitioner, and petitioner's attorney prepared a corrected deed naming "A Nation In One Foundation, Inc., a California Corporation" as the grantee. Petitioner executed this deed on September 11, 1970, and it was recorded the same day.

At petitioner's request, petitioner's attorney concurrently prepared an agreement referring to this conveyance. The agreement was executed on Septmeber 10, 1970, by Clara and one other officer on behalf of ANIOFI and by petitioner. Clara retained the executed copies of this agreement (September 10 agreement); it was recorded by Clara on November 10, 1970, at petitioner's request. The complete text of the agreement is as follows:

## AGREEMENT

THIS AGREEMENT made and entered into this 10th day of September, 1970, between MITZI S. BRIGGS, hereinafter referred to as "Briggs", and A NATION IN ONE FOUNDATION, INC., hereinafter referred to as "Foundation",

### WITNESSETH

WHEREAS Briggs has on this date and contemporaneously herewith executed a deed conveying her propery located at Mt. Hamilton and Crothers Roads, San

Jose, California, consisting of approximately 184.2 acres to A Nation In One Foundation, Inc.; and

WHEREAS the parties hereto wish to restrict the use of this property.

Now THEREFORE, the parties hereto agree that this conveyance is made by Mitzi S. Briggs and accepted by A Nation In One Foundation, Inc. upon the following conditions:.

1. That said property is restricted for the use and benefit of A Nation In One Foundation, Inc. only and is not to be sold, transferred or mortgaged by the Foundation, except that 11.466 acres of this property formerly under option to J. W. Sunzeri, may be sold to him by the Foundation, providing there is unanimous agreement to such a sale among the five (5) Directors of the Foundation, and except that the property may be exchanged as provided in paragraph 2 of this Agreement.

2. That said property shall be used by A Nation In One Foundation, Inc. for the establishment of a cultural center, educational center and medical center for the benefit of all Native American Indians and Alaskan Natives and shall also be used for any purpose which shall aid in the advancement and preservation and perpetuation of said Native American Indians and Alaskan Natives; provided that, if this property cannot be used by the Foundation as a cultural center, educational center and medical center because of County or City zoning restrictions, then and only then, this property may be exchanged by said Foundation for another property to be used by the Foundation for the establishment of said cultural center, educational center and medical center as well as for any purpose which shall aid in the advancement and preservation and perpetuation of the Native American Indians and Alaskan Natives.

3. That Clara Seele, the founder of A Nation In One Foundation, Inc., will serve as Chairman of the Board of Directors of the Foundation and will personally select the members of the Board of Directors, the Board of Advisors and the Board of Trustees of the Foundation from among people who will work with her and for the Foundation on behalf of the Indian people for a period of not less than five (5) years.

4. That the Board of Directors must work toward the advancement and unity of the American Indian as a whole at all times, and any new Board of Directors must continue with the original plans for the establishment of a cultural center, educational center and medical center and must continue with the original plans for the advancement and unity of the Indian people set forth by the original Board. If for any reason there is a lack of funds to complete construction of the three-pronged program, consisting of the establishment of the cultural center, educational center and medical center, then when additional funds are available the entire program must be carried out to completion according to the original plans. If during a period of not less than seven (7) years the Foundation should be dissolved due to failure on the part of said Board or Boards to achieve the goals set forth by the Foundation of working toward unity among the people and the advancement of the people, then the land will revert to the original owner, Mitzi S. Briggs, or in the event of her death, to her assignee, Clara Seele.

IN WITNESS WHEREOF the parties hereto have executed this Agreement on the day and year first above written.

Although the September 10 agreement referred to the September 11 deed, the deed did not refer to the agreement nor did it contain any restrictions. Irrespective of any legal effect of the September 10 agreement, petitioner did not intend to retain any interest in the ranch. She did understand, however, that the gift was subject to a reversion to her individually. If a reversion should occur, she intended to hold the ranch until the center could be established by another group. Petitioner specifically included the restriction against the sale, transfer, or mortgage of the property because there was an indication at the time the gift was made that one group of native Americans wanted to sell the ranch and use the proceeds to purchase guns. Clara understood that the ranch would revert to petitioner if for any reason the board of directors dissolved or if the group wasn't able to work together in developing the land.

ANIOFI was incorporated pursuant to the General Nonprofit Corporation Law of the State of California.[1] The first official meeting of ANIOFI's board of directors was held on November 7, 1970. Corporate bylaws which provided for the election of the board of directors were adopted, and directors were elected at this meeting. Clara, who had been acting president and acting chairman of the board, was officially elected as such. Every member of this newly elected board was a native American; most of them were descendants of the late chiefs of their respective tribes. The members of the board, including Clara, had very little legal or business experience. Moreover, they did not have experience in fund raising or applying for corporate or Federal grants.

During this meeting, Clara called the newly elected board's attention to the September 10 agreement. The minutes of the meeting reflect the following:

> The president then called the board of directors' attention to the agreement entered into on behalf of the Foundation with Mrs. Mitzi Briggs with reference to the land donated by Mrs. Briggs for use by the Foundation. The president called the board's attention to the limitation in said donation providing for a reversion of the land to Mrs. Briggs in the event the Foundation failed to function or to develop the land within seven years. After discussion, it was moved, seconded and unanimously resolved that the Foundation confirm and ratify the agreement entered into with reference to the land donated to the

---

[1] Cal. Corp. Code sec. 9000 et seq. (West 1977).

Foundation by Mrs. Mitzi Briggs, specifically, that the reversionary interest of Mrs. Briggs is recognized as a condition upon the grant of land to the Corporation.

Beginning in September 1970, native Americans used the ranch for various activities including athletic programs, religious rituals, a powwow, and meetings of the board of directors of ANIOFI.

After petitioner deeded the ranch to ANIOFI, an architectural design for the center was prepared. The estimated cost for the completed buildings with furnishings was $4,459,250. ANIOFI tried unsuccessfully to obtain funds to construct this facility from private, corporate, and Federal sources. ANIOFI's application for a Federal grant was not approved.

After efforts to obtain contributions failed, ANIOFI tried to interest commercial developers in developing the ranch. However, the developers explained to Clara that the restrictions in the September 10 agreement prohibited ANIOFI from commercially developing the ranch. Clara and another member of the board of directors then requested petitioner to amend the September 10 agreement by removing the restrictions and the reversionary clause. Petitioner's attorney prepared an amendment agreement which was executed by petitioner and Clara, as president of ANIOFI, on February 27, 1973. The text of the amendment agreement is as follows:

## AMENDMENT AGREEMENT

THIS AGREEMENT, made and entered into this 27 day of February, 1973 between MITZI S. BRIGGS, hereinafter referred to as "BRIGGS" and A NATION IN ONE FOUNDATION, INC., hereinafter referred to as "FOUNDATION".

WHEREAS, "BRIGGS", and "FOUNDATION" entered into an Agreement the 10th day of September 1970, which conveyed to the "FOUNDATION" certain property then owned by "BRIGGS" located at Mt. Hamilton and Crothers Road, San Jose, California, consisting of 184.2 acres.

WHEREAS, the said Agreement of September 10, 1970, contained certain restrictions which have proven to be a detriment to the intentions of the parties entering into said agreement in that they have made the development of said property more difficult.

WHEREAS, the parties to said agreement now desire to modify said agreement so as to remove certain said restrictions,

Now, THEREFORE, the parties hereto agree to the following provisions which supersede and remove certain conditions in the agreement of September 10, 1970, as follows:

1. The said property is to be used to build a cultural center to preserve and perpetuate the culture of the American Indians. To do so:

A. Portions of said property may be sold, mortgaged or leased by "FOUNDATION" with the approval of a majority of the Board of Directors of the "FOUNDATION". "FOUNDATION", with the approval of the Board of Directors having the right to:

(1) Enter into contracts affecting said property with any persons, corporations, associations, partnerships or any other entity organized for financial gain, to further the goals of "FOUNDATION".

(2) negotiate trades, mortgages, leases or sales of a portion of said property in order to obtain finances to complete the development of an American Indian Cultural Center by "A NATION IN ONE FOUNDATION, INC."

2. Any financing Agreement entered into by "FOUNDATION" will be with the understanding of all parties concerned that the actions so taken are to make possible the development of said cultural center as contemplated in the original agreement of September 10, 1970, and that such a center will benefit the American Indian people.

3. IT IS FURTHER UNDERSTOOD AND AGREED, that notwithstanding any of the provisions in the Agreement dated September 10, 1970, which could be construed to the contrary, "A NATION IN ONE FOUNDATION, INC." hereby is granted the right to enter into commercial investments involving said property of any type deemed desirable in order to develop the said property for the purposes for which the property was originally given, provided, that in the event the "FOUNDATION" has not after five (5) years from the date hereof actually completed construction of the main cultural center building designed by Milton Johnson, the said property or any assets of the "FOUNDATION" derived from said property shall be conveyed to the MARIE STAUFFER SIGALL FOUNDATION[2] to be used by the Foundation to preserve and perpetuate the culture of the American Indian in any way its Board of Directors deem appropriate.

On March 18, 1975, petitioner and Clara, as president of ANIOFI, executed a second amended agreement which allowed ANIOFI to sell 26 acres of ranch property. The proceeds from the sale were used to pay delinquent real estate taxes and attorney's fees.

ANIOFI never obtained funds with which to build the center. On February 27, 1978, the 5-year period specified in paragraph 3 of the amendment agreement expired. According to that agreement, the ranch was conveyed to the Marie Stauffer Sigall Foundation because ANIOFI had not completed construction of the main cultural center building.

On her 1970 income tax return, petitioner claimed a $507,000

---

[2]The Marie Stauffer Sigall Foundation is a private foundation formed by petitioner and her uncle in approximately 1956. Petitioner is president of the foundation.

charitable contribution representing the fair market value of the ranch donated to ANIOFI. She deducted $282,237 in 1970 and carried over and deducted $224,763 in 1971. In his notice of deficiency, respondent disallowed the entire amount of the claimed deductions for both years.

## OPINION

Section 170(a)[3] allows a deduction for any charitable contribution (as defined in section 170(c)), payment of which is made within the taxable year. With respect to transfers subject to a condition or power, section 1.170A–1(e), Income Tax Regs.,[4] provides in relevant part:

If an interest in property passes to, or is vested in, charity on the date of the gift and the interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appears on the date of the gift to be so remote as to be negligible, the deduction is allowable.

On August 12, 1970, petitioner executed a deed purporting to donate Mount Hamilton Ranch (the ranch) to "A Nation In One." It was later discovered that "A Nation In One Foundation, Inc." should have been named as grantee. A corrected deed was executed on September 11, 1970. On September 10, 1970, an agreement (September 10 agreement) was executed by petitioner and, on behalf of A Nation In One Foundation, Inc. (ANIOFI), by Clara Seele (Clara). This agreement restricted the ranch for the use and benefit of ANIOFI only. It was specifically agreed that the land would be used for the establishment of a cultural, educational, and medical center (the center) for the benefit of all native American Indians and Alaskan natives (native Americans). The property could not be sold, transferred, or mortgaged by ANIOFI. For 5 years, Clara was to name the board of directors and act as chairman. Paragraph four of the agreement provided in part:

If during a period of not less than seven (7) years the Foundation should be dissolved due to failure on the part of said Board or Boards to achieve the goals set forth by the Foundation of working toward unity among the people and the

---

[3]All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

[4]Except as otherwise provided, secs. 1.170A–1 through 1.170A–11, Income Tax Regs., are applicable to contributions paid in taxable years beginning after Dec. 31, 1969. Sec. 1.170–0, Income Tax Regs.

advancement of the people, then the land will revert to the original owner, Mitzi S. Briggs, or in the event of her death, to her assignee, Clara Seele.

The issue in this case is whether petitioner is entitled to a charitable deduction in 1970 on account of the transfer of the ranch to ANIOFI. More specifically, the issue is whether petitioner's gift was subject to conditions subsequent, the occurrence of which was not so remote as to be negligible. If we should find that petitioner is entitled to a charitable deduction for the transfer of her ranch to ANIOFI, we must then determine the value of the gift and whether ANIOFI was a private foundation, a private operating foundation, or a public charity for purposes of determining the limitation applicable to the computation of a charitable deduction.

Respondent contends that the September 10 agreement and the September 11 deed must be read together as one instrument. Respondent further contends that the "conditions" enumerated in paragraphs 1 through 4 of the agreement are conditions subsequent, the failure of any one of which gives petitioner the right of reentry, and that the possibility of the occurrence of these events on the date of the gift did not appear to be so remote as to be negligible. Accordingly, respondent argues that under section 1.170A–1(e), Income Tax Regs., petitioner is not entitled to the claimed deductions.

Petitioner contends, first, that the September 10 agreement and the September 11 deed should not be read together as one instrument. Petitioner contends that by the September 11 deed petitioner conveyed a fee simple title to ANIOFI. We do not agree. It is the general rule in California that two or more written documents relating to the same subject and executed by the same parties as part of substantially one transaction are to be construed together. Cal. Civ. Code sec. 1642 (West 1977); *Nevin v. Salk*, 45 Cal. App. 3d 331, 119 Cal. Rptr. 370 (1975); *Cadigan v. American Trust Co.*, 131 Cal. App. 2d 780, 281 P.2d 332 (1955). The documents need not be executed contemporaneously, nor is it necessary for either instrument to refer to the other. *Nevin v. Salk, supra; Cadigan v. American Trust Co., supra.* Whether the several writings comprise one transaction is a question of fact. *Nevin v. Salk, supra.* Here, petitioner signed the September 11 deed granting her ranch to ANIOFI, and petitioner and Clara executed the September 10 agreement. This agreement referred to the "contemporaneous" execution of a

deed conveying petitioner's ranch to ANIOFI. During a meeting on November 7, 1970, the board of directors of ANIOFI specifically acknowledged that the grant of land was subject to the terms of the agreement. At all times subsequent to September 11, 1970, the parties treated the September 10 agreement as modifying the September 11 deed. In light of these facts, we conclude that the September 10 agreement and the September 11 deed are to be read together as one instrument.

The parties do not dispute that if the deed and agreement are read together, the September 11 deed as modified by the September 10 agreement conveys the property to ANIOFI in fee simple subject to a condition subsequent. Petitioner has the right of reentry or power of termination if the condition is broken. See Cal. Civ. Code secs. 708 and 1438 (West 1977); *McDougall v. Palo Alto Unified School District*, 212 Cal. App. 2d 422, 28 Cal. Rptr. 37 (1963). This means that upon failure of the condition, the estate reverts to petitioner only if she exercises her right of reentry. *City of Santa Monica v. Jones*, 104 Cal. App. 2d 463, 232 P.2d 55 (1951). The parties disagree, however, as to which of the conditions must be breached in order to trigger petitioner's right of reentry. Petitioner contends that the reversionary clause in the last sentence of paragraph 4 is operative only as to that paragraph and that the remaining conditions specified in the agreement are mere covenants. That is, petitioner contends that she has a right of reentry only if during a period of not less than 7 years the board of directors of ANIOFI is dissolved due to the failure on their part to achieve the goals of ANIOFI. On the other hand, respondent contends that a breach of any of the conditions specified in paragraphs 1 through 4 triggers petitioner's right of reentry.

Under California law conditions which result in a forfeiture are strictly construed against the party for whose benefit they were created. Cal. Civ. Code sec. 1442 (West 1977); *Conolley v. Power*, 70 Cal. App. 70, 232 P. 744 (1924). The terms of the forfeiture must be express and unambiguous. *Conolley v. Power, supra.* However, where the language used both in its technical and popular sense imports a condition, a clause of reentry is unnecessary. *Papst v. Hamilton*, 133 Cal. 631, 66 P. 10 (1901). Here, the land was "conveyed" upon the specific "conditions" enumerated in paragraphs 1 through 4. The language of the agreement is clear and unambiguous; it expresses more than a

mere statement of the purpose for which the land conveyed was to be used. See *Biescar v. Czechoslovak-Patronat,* 145 Cal. App. 2d 133, 302 P.2d 104 (1956); *Marshall v. Standard Oil Co. of California,* 17 Cal. App. 2d 19, 61 P.2d 520 (1936). Because the qualifying words are in the granting part of the agreement and clearly connected with the word "conveyance," the restrictions are conditions rather than covenants. *Biescar v. Czechoslovak-Patronat, supra.* Compare *MacDonald Properties v. Bel-Air Country Club,* 72 Cal. App. 3d 693, 140 Cal. Rptr. 367 (1977). Is is also clear from the record that petitioner intended the gift to be conditional as specified. If ANIOFI failed to use the ranch for the establishment of the center, petitioner intended to retake the land and hold it for another group which was willing and able to establish the center. Accordingly, we conclude that a breach of any one of the conditions enumerated in paragraphs 1 through 4 triggers petitioner's right of reentry.

We next must determine whether, as of September 10, 1970, the possibility that the conveyance of the ranch to ANIOFI might be defeated by petitioner's reentry upon the breach of any one of the conditions enumerated in paragraphs 1 through 4 appeared "to be so remote as to be negligible." Petitioner contends that on September 10, 1970, it was highly unlikely that an event triggering forfeiture would occur. Moreover, she contends that even if a breach did occur, she would not exercise her right of reentry. On the other hand, respondent contends that on the date of the gift the possibility of breach of each of the conditions and petitioner's ensuing reentry was not so remote as to be negligible and we agree.

Neither party cited, nor were we able to find, a court interpretation of the "so remote as to be negligible" language as used in section 1.170A–1(e), Income Tax Regs. However, section 20.2055–2(b), Estate Tax Regs., provides in part that if an interest passes to a charity at the time of a decedent's death and the interest is subject to a condition subsequent, "the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable." The phrase "so remote as to be negligible" as it appears in section 20.2055–2(b), Estate Tax Regs., has been defined as "a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction." *United*

*States v. Dean*, 224 F.2d 26, 29 (1st Cir. 1955). It is likewise a chance which every dictate of reason would justify an intelligent person in disregarding as so highly improbable and remote as to be lacking in reason and substance. *Estate of Woodworth v. Commissioner*, 47 T.C. 193, 196 (1966). See *United States v. Provident Trust Co.*, 291 U.S. 272 (1934). Because the operative language of section 20.2055–2(b), Estate Tax Regs., is identical to that contained in section 1.170A–1(e), Income Tax Regs., we believe that these prior interpretations of the "so remote as to be negligible" language of section 20.2055–2(b), Estate Tax Regs., are instructive in this case.

Applying these criteria to the facts of this case, it is apparent that on the date of the gift the possibility that each of the conditions specified in paragraphs 1 through 4 of the agreement might not be met was real. In the first place, paragraph 2 of the September 10 agreement provides that the property "shall be used" by ANIOFI for the establishment of a cultural, educational, and medical center. However, petitioner did not provide funds for the establishment of the center, and at the time the gift was made, no financing, either from public or private sources, was readily available. Neither Clara nor anyone else working with her had experience in fundraising or obtaining grant money. Petitioner failed to produce any evidence that funds to establish the center were forthcoming; there was a good chance that the center might never come into existence. See *Estate of Woodworth v. Commissioner, supra*. In light of these facts, we conclude that the possibility that the property would not be used for the establishment of the center was not so remote as to be negligible.

Secondly, it is evident that the possibility of selling, mortgaging, or developing the property, which was restricted by paragraph 1 of the September 10, 1970, agreement, was not so remote as to be negligible. On the date of the gift, it was certainly foreseeable that ANIOFI needed funds to initiate its campaign for charitable contributions, funds for feasibility studies and operation expense, funds for preparing and submitting grant proposals, funds for designing plans for the center, and funds for real estate taxes assessed on the property. There was no known or prospective source for payment of these expenditures on the date of the gift. Thus, it was quite likely

(and, in fact, occurred) that a portion of the land would be sold, mortgaged, or developed to provide funds.

Moreover, there was a high probability of managerial problems. Paragraph 3 of the agreement required that Clara serve as chairman of the board of directors of ANIOFI and personally select the members of the board for a period of not less than 5 years. However, it seemed probable that Clara lacked the qualities that would enable her to function as a leader and operate as an organizer and fundraiser. Clara had no prior business or management experience. It was quite possible that she would have difficulty directing the board for 5 years, and petitioner was fully aware that many of those interested in establishing the center resented Clara's position of power.

Furthermore, no member of the board had business experience or experience in fundraising or obtaining grants. The board of directors consisted primarily of descendants of the last chiefs of their respective tribes. Yet, paragraph 4 of the September 10 agreement provides specifically that if during a period of not less than 7 years ANIOFI were dissolved due to failure on the part of the board of directors to achieve the goals of the groups, then the ranch would revert to petitioner. Petitioner contends that the board of directors would never voluntarily dissolve and purposely relinquish petitioner's gift if it failed to achieve the goals of ANIOFI. We conclude, however, that on the date of the gift there was more than a negligible possibility that the desires of the board of directors might become frustrated by the conditions imposed under the September 10 agreement to the extent that the board would dissolve regardless of the consequences. The gift of the ranch carried with it obligations that the board of directors may not have wished to fulfill or may not have been capable of fulfilling. A gift subject to severe restrictions is not always accepted or retained by the donee. See sec. 1.170A–1(e), Income Tax Regs.; *Helvering v. Union Trust Co.*, 125 F.2d 401, 404 (4th Cir. 1942), cert. denied 316 U.S. 696 (1942).[5]

---

[5]Petitioner also contends that ANIOFI, as a California nonprofit corporation, has at all times since its inception been subject to the supervision of the attorney general of the State of California. Cal. Corp. Code secs. 9505 and 10207 (West 1977). Petitioner argues that because the attorney general has an interest in maintaining the assets of ANIOFI, he would prevent any dissolution of the board of directors which would trigger petitioner's right of reentry. Petitioner failed, however, to establish that the attorney general would prevent such dissolution. Petitioner's argument is, at best, conjectural.

Petitioner further argues that even if there were a breach of a condition of the September 10 agreement, on the date of the gift it appeared extremely remote that petitioner would execute her right of reentry. The record is clear, however, that petitioner's utmost desire in making the gift was to aid in the establishment of the cultural, medical, and educational center. We find it more than a negligible possibility that petitioner would exercise her right of reentry should she find that her overall goals were being thwarted.

In light of the above facts, we believe that the possibility of petitioner's reentry due to breach of any one of the conditions specified in paragraphs 1 through 4 of the September 10 agreement did not appear on the date of the gift to be so remote as to be negligible. We must therefore conclude that petitioner's charitable deduction is not allowable.[6]

Because we hold for respondent on this issue, we need not consider the remaining issues raised by the parties.

*Decision will be entered for the respondent.*

---

[6]Respondent contends, in the alternative, that petitioner did not donate a permitted partial interest under sec. 170(f)(3) and sec. 1.170A-7, Income Tax Regs. Sec. 1.170A-7(a)(3), Income Tax Regs., provides in part:

(3) A deduction shall not be disallowed under section 170(f)(3)(A) and this section merely because the interest which passes to, or is vested in, the charity may be defeated by the performance of some act or the happening of some event, if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible.

Petitioner contends that sec. 1.170A-7, Income Tax Regs., does not affect the completeness of her gift because the possibility of forfeiture on the date of the gift was so remote as to be negligible. For all the reasons that we found more than a negligible possibility of forfeiture when we applied the same test pursuant to sec. 1.170A-1(e), Income Tax Regs., to the facts, we also find more than a remote possibility of forfeiture for purposes of sec. 1.170A-7, Income Tax Regs.