PATRICK J. WACHTER AND LOUISE M. WACHTER, PETITIONERS
*v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MICHAEL E. WACHTER AND KELLY A. WACHTER, PETITIONERS
*v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9213–11, 9219–11.          Filed March 11, 2014.

For 2004 through 2006 Ps reported charitable contributions that flowed to them from a partnership and an LLC, both of which were treated as partnerships for tax purposes. For each year the LLC reported charitable contributions of cash and the partnership reported bargain sales of conservation easements as charitable contributions of property. R issued notices of deficiency to Ps disallowing all of the charitable contribution deductions and determining accuracy-related penalties. R filed a motion for partial summary judgment asserting that Ps did not satisfy the "contemporaneous written acknowledgment" requirement for the cash contributions. For the property contributions, respondent asserted that the easements were not granted in perpetuity as a result of a North Dakota State law that limits the duration of a real property easement. *Held*: North Dakota State law limits the duration of an easement to not more than 99 years, thus precluding a North Dakota conservation easement from qualifying as granted "in perpetuity" under I.R.C. sec. 170(h)(2)(C) and (5)(A). *Held*, *further*, material facts remain in dispute regarding whether Ps satisfied the "contemporaneous written acknowledgment" requirement of I.R.C. sec. 170(f)(8) and sec. 1.170A–13(f)(15), Income Tax Regs., and thus summary judgment is not appropriate on this issue.

*Jon J. Jensen*, for petitioners.
*David L. Zoss* and *Christina L. Cook*, for respondent.

BUCH, *Judge*: These cases are before the Court on respondent's motion for partial summary judgment. The issues for decision are:

(1) whether a State law that limits the duration of an easement to not more than 99 years precludes petitioners' conservation easements from qualifying as granted "in perpetuity" under section 170(h)(2)(C) or (5)(A).[1] We hold that it does; and

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

140

(2) whether the documents petitioners provided to the IRS satisfy the "contemporaneous written acknowledgment" requirement of section 170(f)(8) and section 1.170A–13(f)(15), Income Tax Regs. We hold that material facts remain in dispute and thus summary judgment is not appropriate for this issue.

FINDINGS OF FACT

The transactions at issue involve members of the Wachter family and entities that they controlled. Michael and Kelly Wachter filed joint income tax returns for all the years in issue: 2004 through 2006. The same is true for Patrick and Louise Wachter. During the years in issue, Michael, Patrick, and Louise each held varying interests in two entities: WW Ranch, a partnership, and Wind River Properties LLC (Wind River), a limited liability company that is treated as a partnership for tax purposes. Wind River at times operated under the name Windsor Storage. For convenience, we will refer to petitioners individually by their given names or to Michael, Patrick, and Louise (as owners of WW Ranch and Wind River) collectively as the Wachters.

*Farm and Ranch Lands Protection Program*

Section 2503 of the Farm Security and Rural Investment Act of 2002, Pub. L. No. 107–171, 116 Stat. at 267, authorized the Secretary of Agriculture to purchase conservation easements in order to protect topsoil by limiting non-agricultural uses of certain lands and authorized funding for such purchases. The United States, acting through the Commodity Credit Corporation (CCC), entered into cooperative agreements in order to implement the Farm and Ranch Lands Protection Program and used the Natural Resources Conservation Service (NRCS) of the Department of Agriculture to administer the program. The parties provided to the Court a copy of a 2003 cooperative agreement between the CCC and the American Foundation for Wildlife (AFW) with an attachment referencing land owned by WW Ranch. The cooperative agreement listed the requirements for such an easement, including that the easement "[r]un with the land in perpetuity or a minimum of thirty years, where State law prohibits a permanent easement." As a part of the

cooperative agreement, the NRCS listed its prerequisites for easement purchases before the Federal Government would release the Federal funds to reimburse AFW for up to 50% of the easement purchase price. The cooperative agreement included a provision whereby a landowner could donate up to 25% of the appraised fair market value of the easement and that such a donation may be considered as part of AFW's contribution to the purchase price. However, in order for the landowner's donation to be considered part of AFW's contribution, AFW was required to get a current appraisal of the contribution. In the event the landowner made such a donation, NRCS required a copy of the landowner's IRS Form 8283, Noncash Charitable Contributions, before the NRCS would release the federal funds.

*Cash Contributions*

On its returns for the years in issue, Wind River reported the following cash charitable contributions, which it allocated amongst its members:

| | |
|---|---|
| 2004 | $170,000 |
| 2005 | 171,150 |
| 2006 | 144,500 |

On behalf of Wind River, Michael and Patrick signed an agreement dated February 26, 2004, with North Dakota Natural Resource Trust (NRT) agreeing to donate $170,000 by March 1, 2004. Michael signed a check dated February 26, 2004, from Windsor Storage payable to NRT for $170,000. NRT provided a letter dated March 23, 2004, to Michael and Patrick "dba WW Ranch" acknowledging the cash gift and stating that NRT provided no goods or services in exchange for the donation.

Michael signed a check dated March 23, 2005, from Windsor Storage payable to NRT for $171,150. The Wachters provided the IRS with a letter from NRT dated March 21, 2005, to Windsor Storage acknowledging the cash gift and stating that NRT provided no goods or services in exchange for the donation. The only copy of this letter in the record is unsigned.

Someone prepared a check dated May 9, 2006, from Windsor Storage payable to NRT for $144,500. The only copy of this check in the record is unsigned, but the parties do not

appear to dispute that the payment was made. NRT provided a letter dated May 10, 2006, to Windsor Storage acknowledging the cash gift and stating that NRT provided no goods or services in exchange for the donation.

*Bargain Sale Charitable Contributions*

On its partnership returns for the years in issue, WW Ranch reported bargain sales of conservation easements as charitable contributions as follows:

| | |
|---|---|
| 2004 ............................................................ | $349,000 |
| 2005 ............................................................ | 247,550 |
| 2006 ............................................................ | 162,500 |

For each year, the parties to the transaction obtained two appraisals of the property that was to be contributed. Each appraisal valued the property according to a different land use, and the Wachters used the difference in appraised values to determine the value of the conservation easement and thus the amounts of their charitable contributions.

NRT obtained an appraisal of WW Ranch's sections 5 and 6 parcel[2] as of April 30, 2003, determining a value of $31,000 for use as agricultural property. A second appraisal dated May 14, 2003, was prepared for the sections 5 and 6 parcel, determining a value of $1,400,000 for use as "rural residential sites". On March 8, 2004, WW Ranch sold a conservation easement on its sections 5 and 6 parcel to AFW for $1,020,000 (of which $170,000 was supplied by NRT). The Wachters subtracted the sale price of $1,020,000 from the difference in value of the two appraisals of $1,369,000 to arrive at their charitable contribution deduction of $349,000.

NRT obtained two appraisals of WW Ranch's section 8 parcel as of February 21, 2005, one for use as agricultural property determining a value of $10,000 and one for "full developmental value" determining a value of $915,000. On March 24, 2005, WW Ranch sold a conservation easement on the section 8 parcel to AFW for $657,450 (of which $171,150 was supplied by NRT). The Wachters subtracted the sale

_____

[2] Each parcel at issue is located in one or more sections of Township 140 North, Range 81 West of Morton County, North Dakota. The parties refer to the properties at issue as the "sections 5 and 6 parcel", the "section 8 parcel", and the "sections 16 and 18 parcels", and we adopt their terminology.

price of $657,450 from the difference in value of the two appraisals of $905,000 to arrive at their charitable contribution deduction of $247,550.

NRT obtained two appraisals of WW Ranch's sections 16 and 18 parcels as of August 25, 2005, one subject to a proposed conservation easement determining a value of $46,000 and one for rural residential development determining a value of $696,000. On May 11, 2006, WW Ranch sold a conservation easement on its section 16 and 18 parcels to AFW for $487,500 (of which $144,500 was supplied by NRT). The Wachters subtracted the sale price of $487,500 from the difference in value of the two appraisals of $650,000 to arrive at their charitable contribution deduction of $162,500.

*Individual Reporting*

Patrick and Louise reported charitable contributions on their joint Federal income tax returns as follows:

| 2004 | Cash—Wind River | $85,000 |
|------|-----------------|---------|
|      | Noncash—WW Ranch | 174,500 |
| 2005 | Cash | 85,575 |
|      | Noncash | 123,775 |
| 2006 | Cash | 72,250 |
|      | Noncash | 81,250 |

Michael and Kelly reported charitable contributions on their joint Federal income tax returns as follows:

| 2004 | Cash—Wind River | $85,000 |
|------|-----------------|---------|
|      | Noncash—WW Ranch | 174,500 |
| 2005 | Cash | 85,575 |
|      | Noncash | 123,775 |
| 2006 | Cash | 72,250 |
|      | Noncash | 81,250 |

On April 8, 2011, respondent issued notices of deficiency to both couples disallowing the charitable contribution deductions related to WW Ranch and Wind River and determining accuracy-related penalties under section 6662. Each couple timely filed a petition disputing their notice of deficiency, and the Court consolidated the cases for trial, briefing, and opinion. Respondent filed a motion for partial summary judgment and a memorandum of facts and law in support of his motion for partial summary judgment, the Wachters filed a response, and respondent filed a reply.

OPINION

Either party may move for summary judgment regarding all or any part of the legal issues in controversy. *See* Rule 121(a). We may grant summary judgment only if there are no genuine disputes of fact. *See* Rule 121(b); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). Respondent, as the moving party, bears the burden of proving that no genuine dispute exists as to any material fact and that respondent is entitled to judgment as a matter of law. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, the factual materials and the inferences drawn from them must be considered in the light most favorable to the nonmoving party. *See FPL Grp., Inc. v. Commissioner*, 115 T.C. 554, 559 (2000); *Bond v. Commissioner*, 100 T.C. 32, 36 (1993); *Naftel v. Commissioner*, 85 T.C. at 529. When a motion for summary judgment is made and properly supported, the nonmoving party may not rest on mere allegations or denials but must set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Sundstrand Corp. v. Commissioner*, 98 T.C. at 520; *see also* Rule 121(d). Respondent filed the motion for partial summary judgment; therefore we construe all factual disputes and draw all inferences in favor of the Wachters.

A deduction is allowed for any charitable contribution for which payment is made within the taxable year if the contribution is verified under regulations prescribed by the Secretary. Sec. 170(a)(1). The Wachters claimed charitable contribution deductions for both cash and noncash contributions for each year. We discuss each in turn.

*Noncash Contributions*

Generally, a charitable contribution deduction is not allowed for a charitable gift of property consisting of less than the donor's entire interest in that property. Sec. 170(f)(3)(A). However, there is an exception for a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii). A contribution of real property is a qualified conservation contribution if (1) the real property is a "qualified real property interest", (2) the contributee is a "qualified organization", and (3) the

contribution is "exclusively for conservation purposes." Sec. 170(h)(1); *see also* sec. 1.170A–14(a), Income Tax Regs. For the purposes of the motion for partial summary judgment, respondent argues that the State law restricting easements to 99 years prevents the conservation easements from being qualified real property interests and prevents the conservation easements from being exclusively for conservation purposes.

### *North Dakota Law*

We look to State law to determine the nature of property rights, whereas Federal law determines the appropriate tax treatment of those rights. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985); *see also 61 York Acquisition, LLC v. Commissioner*, T.C. Memo. 2013–266, at *8.

Beginning in 1915, the United States signed several treaties agreeing to protect migratory birds and their habitats. *See North Dakota v. United States*, 460 U.S. 300, 309–310 n.12 (1983), *aff'g* 650 F.2d 911 (8th Cir. 1981). Between 1931 and 1977 the United States acquired easements covering nearly 1 million acres of land in North Dakota for use as migratory bird refuges. *Id.* at 304–305. However, cooperation between the Federal Government and the State of North Dakota broke down such that in 1977 the State enacted a law, which it amended in 1979 and 1981, (1) requiring approval for all wetland acquisitions first by the board of county commissioners and only then by the governor, (2) allowing the landowner to negotiate the terms of the easement and "'drain any after-expanded wetland or water area in excess of the legal description'", and (3) restricting *all* easements to a maximum of 99 years. *Id.* at 306–308 & n.8 (quoting N.D. Cent. Code sec. 20.1–02–18.2 (1981)).

The United States brought a declaratory judgment action in the U.S. District Court for the District of North Dakota, seeking judgment that, inter alia, the State law was hostile to Federal law in certain respects and could not be applied. *Id.* at 309. The District Court granted the United States summary judgment, and the United States Court of Appeals for the Eighth Circuit affirmed. *Id.* The Supreme Court determined that because of the migratory bird treaties and the "'certainty and finality' that we have regarded as 'critical

when * * * federal officials carrying out the mandate of Congress irrevocably commit scarce funds'", the North Dakota statute was hostile to Federal interests and may not be applied to the easements for which the Federal Government had already received consent. *Id.* at 320 (quoting *United States v. Little Lake Misere*, 412 U.S. 580, 596 (1973)).

The Supreme Court in *North Dakota v. United States* invalidated the 99-year restriction only insofar as it related to easements on wetlands for which the Federal Government had already received consent. The Supreme Court did not invalidate the 99-year restriction in all situations in which the Federal Government is a party, directly or indirectly, to an easement purchase.

For the years in issue, N.D. Cent. Code sec. 47–05–02.1 (1999 & Supp. 2013) provided in pertinent part:

> Real property easements * * * which become binding after July 1, 1977, shall be subject to the requirements of this section. These requirements are deemed a part of any agreement for such interests in real property whether or not printed in a document of agreement.
>
> *        *        *        *        *        *        *
>
> 2. The duration of the easement * * * on the use of real property must be specifically set out, and in no case may the duration of any interest in real property regulated by this section exceed ninety-nine years. * * *

Both parties allege that the State law at issue here is unique because this is the only State that has a law that provides for a maximum duration that may not be overcome by agreement. The parties agree that, by operation of State law, the easements at issue will expire 99 years after they were conveyed. The parties do not draw a distinction where the donee of the easement is the Federal Government or an entity acting on behalf of the Federal Government. Nor do we see a distinction.

Respondent asserts that the State law restriction prevents the easements from being granted in perpetuity, which in turn prevents them from being both qualified real property interests under section 170(h)(2) and contributions exclusively for conservation purposes under section 170(h)(5). Petitioners, however, assert that the 99-year limitation should be considered the equivalent of a remote future event or the retention of a negligible interest because at present the remainder is "essentially valueless." There are two separate

and distinct perpetuity requirements, and the failure to satisfy either of them will prevent the easements from being qualified conservation contributions. *See Belk v. Commissioner*, 140 T.C. 1, 12 (2013).

*Qualified Real Property Interest*

Under section 170(h)(2)(C), a qualified real property interest means "a restriction (granted in perpetuity) on the use which may be made of the real property." The Wachters assert that the possibility that the land would revert back to them, WW Ranch, or their successors in interest is the equivalent of a remote future event that will not prevent the easements from being perpetual. Section 1.170A–14(g)(3), Income Tax Regs., provides:

> (3) Remote future event.—A deduction shall not be disallowed under section 170(f)(3)(B)(iii) and this section merely because the interest which passes to, or is vested in, the donee organization may be defeated by the performance of some act or the happening of some event, if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible. * * *

This Court has construed "so remote as to be negligible" as "'a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction'", *885 Inv. Co. v. Commissioner*, 95 T.C. 156, 161 (1990) (quoting *United States v. Dean*, 224 F.2d 26, 29 (1st Cir. 1955)), or "'a chance which every dictate of reason would justify an intelligent person in disregarding as so highly improbable and remote as to be lacking in reason and substance'", *Graev v. Commissioner*, 140 T.C. 377, 394 (2013) (quoting *Briggs v. Commissioner*, 72 T.C. 646, 657 (1979), *aff'd without published opinion*, 665 F.2d 1051 (9th Cir. 1981)). "[A] conservation easement fails to be 'in perpetuity' * * * if, on the date of the donation, the possibility that the charity may be divested of its interest in the easement is not so remote as to be negligible." *Id.* at 393.

"Remote" has various commonly accepted meanings. For example, remote can mean "far distant in space", "secluded", "distant in time", "distant in relationship", or "slight or faint; unlikely". Webster's New Universal Unabridged Dictionary 1630 (2d ed. 2003). As is relevant here, "remote" could refer to a temporal sense (distant, remote in time) or in a probable

sense (unlikely, a remote possibility). *Id.*; *see also* The American Heritage Dictionary of the English Language 1476 (4th ed. 2000). Both the regulation and our caselaw focus on the term "remote" in terms of likelihood.

As used in the regulation and as interpreted by our caselaw, the event is not remote. On the dates of the donations it was not only possible, it was inevitable that AFW would be divested of its interests in the easements by operation of North Dakota law. Therefore, the easements were not restrictions granted in perpetuity and were thus not qualified conservation contributions.[3] As a result, we will grant respondent's motion for partial summary judgment insofar as the State law prevents a charitable contribution deduction for a conservation easement conveyed under the State law.[4]

*Cash Contributions*

For any cash charitable contribution of $250 or more, the taxpayer must obtain a contemporaneous written acknowledgment from the donee. Sec. 170(f)(8)(A). Section 170(f)(8)(B) provides that the contemporaneous written acknowledgment must include the following:

> (B) CONTENT OF ACKNOWLEDGEMENT.—An acknowledgment meets the requirements of this subparagraph if it includes the following information:
>
>> (i) The amount of cash and a description (but not value) of any property other than cash contributed.
>>
>> (ii) Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).
>>
>> (iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) or, if such goods or services consist solely of intangible religious benefits, a statement to that effect.

---

[3] We note that, in isolated situations, a long-term lease may be treated as the equivalent of a fee simple interest. *See, e.g.*, secs. 1.1031(a)–1(c), 1.1033(g)–1(b)(4), Income Tax Regs. But unlike section 170(h)(2)(C), those isolated situations address exchanges for "like" or "similar" property and do not involve an express statutory requirement that an interest be "in perpetuity".

[4] We express no opinion on petitioners' argument that at present the remainder is essentially valueless; to do so would require that we resolve a question of fact regarding value.

Section 170(f)(8)(C) provides that a written acknowledgment is contemporaneous when the taxpayer obtains it on or before the earlier of: (1) the date the taxpayer files a return for the taxable year of contribution or (2) the due date, including extensions, for filing that return.

Respondent asserts that none of the letters the Wachters provided to the IRS constitutes a valid contemporaneous written acknowledgment. Respondent asserts (1) that none of the letters was addressed to Wind River, the entity that made the cash contributions, (2) NRT provided goods or services to the Wachters each year that were not mentioned in the letters,[5] and (3) the values of the goods or services were not mentioned in the letters. Further, respondent asserts the 2005 letter fails to qualify as a contemporaneous written acknowledgment because the letter is unsigned and it predates the check by two days.[6]

With respect to the assertion that the Wachters received some benefit that was not disclosed or valued in the letters, respondent has not proven on this record that the Wachters expected or received a benefit in exchange for their cash donations. If a taxpayer receives or expects to receive a benefit that is not disclosed in the contemporaneous written acknowledgment, the entire cash contribution deduction is disallowed. *See Addis v. Commissioner*, 118 T.C. 528 (2002), *aff'd*, 374 F.3d 881 (9th Cir. 2004); *see also Viralam v. Commissioner*, 136 T.C. 151, 170–171 (2011); *Averyt v. Commissioner*, T.C. Memo. 2012–198. Because the receipt of an expected or actual benefit is a material fact that remains in dispute, summary judgment is not proper on this issue.

The Wachters assert that the checks and letters for each year as well as the 2004 agreement can be taken together to meet the requirements of a contemporaneous written acknowledgment. In *Irby v. Commissioner*, 139 T.C. 371, 389 (2012), the Court held that a series of documents may constitute a contemporaneous written acknowledgment, and the Wachters may yet be able to authenticate disputed documents and provide additional documents to supplement those

---

[5] At minimum, respondent asserts that the goods or services provided were the appraisals NRT obtained and the partial funding it supplied for the bargain sales.

[6] Respondent also contests the authenticity of this document.

they have included with the stipulation of facts. Because we must construe all factual inferences in favor of the non-moving party, we must deny summary judgment regarding the cash charitable contribution deductions.

*Conclusion*

We conclude that respondent is entitled to partial summary judgment disallowing the charitable contribution deductions for the bargain sales of the conservation easements because North Dakota law prohibits real property easements from being granted in perpetuity. Thus a conservation easement conveyed subject to the statute cannot result in a charitable contribution deduction under section 170(f)(3)(B)(iii). However, because material facts remain in dispute as to whether the Wachters expected to receive or actually received goods or services in exchange for their cash contributions and the Wachters may yet be able to supplement the record to meet all of the requirements of a contemporaneous written acknowledgment, we will deny the motion for partial summary judgment on the issue of the cash contributions.

To reflect the foregoing,

*An appropriate order will be issued*.