# United States Tax Court

T.C. Memo. 2022-126

FELIX LUU,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 714-20W.                     Filed December 28, 2022.

————

Felix Luu, pro se.

*Lesley A. Hale* and *Michael Skeen*, for respondent.

## MEMORANDUM OPINION

WEILER, *Judge*: Felix Luu, pursuant to Rule 121,[1] filed a Motion for Summary Judgment on November 9, 2020. On January 4, 2021, respondent filed his Response to petitioner's Motion for Summary Judgment. Commencing September 27, 2021, a remote hearing was held to determine the accuracy of the administrative record. After the hearing, on April 4, 2022, petitioner filed a First Supplement to his Motion for Summary Judgment (petitioner's original and supplemental motions are hereinafter collectively referred to as Motion for Summary Judgment). On June 27, 2022, respondent filed his Response (Supplemental Response) to petitioner's Motion for Summary

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*2] Judgment. Petitioner filed his Reply to respondent's Supplemental Response on July 5, 2022.

For the reasons below, we will deny petitioner's Motion for Summary Judgment and grant respondent's Cross-Motion for Summary Judgment.[2] Furthermore, we will enter a decision in this matter affirming the Internal Revenue Service (IRS) Whistleblower Office's (WBO) final determination regarding petitioner's whistleblower award.

*Background*

Petitioner submitted several Forms 211, Application for Award for Original Information, each dated February 24, 2009, to the WBO. Petitioner's Forms 211 were related to his family's business operations in California, which included a retail supermarket and a poultry farm. Petitioner served as the general manager of the retail supermarket and was an equal shareholder[3] with his six siblings in the family's business operations. By letters dated April 14, 2009, the WBO acknowledged receipt of petitioner's application for award and Forms 211 and assigned petitioner's case an initial claim number of 2009-001609.[4]

On December 8, 2009, petitioner, as a minority shareholder, filed a verified complaint in the Superior Court of California, County of Sacramento, to compel the payment of a dividend or declaratory relief, injunctive relief, an accounting, and appointment of a receiver against one or more California corporations and a California limited liability company (Companies), some of which were organized as S corporations for federal income tax purposes. In the verified complaint petitioner contended that he had only recently learned that he had received a lesser dividend than other shareholders of the Companies and that, on the basis of his own internal investigation, the other shareholders had been skimming profits from the Companies.

---

[2] As noted *infra* p. 10, we recharacterize respondent's Response and Supplemental Response as a Cross-Motion for Summary Judgment. *See Klein v. Commissioner*, 149 T.C. 341, 343 (2017).

[3] While one of the family businesses was organized as an LLC and therefore petitioner and his siblings are considered "members" under state law, we refer to them as "shareholders" throughout this Opinion since a majority of the businesses are organized as corporations and have elected S corporation status.

[4] The record reflects that the WBO later deemed the initial claim the "master claim," and additional claim numbers were opened, per each target taxpayer, bearing claim numbers 2009-001610 through 2009-001621.

[*3]     On December 1, 2009, the Companies' six shareholders (excluding petitioner) filed voluntary disclosures with the IRS. The IRS preliminarily accepted these voluntary disclosures on January 12, 2010.

On December 10, 2009, petitioner wrote to the IRS and furnished detailed information including copies of his verified complaint and third-party accounting reflecting the Companies' and the shareholders' unreported income. Some of the information petitioner furnished was not disclosed by the Companies' other six shareholders in their voluntary disclosures. However, the IRS ultimately did not use the additional information petitioner furnished in making its adjustments to the Companies' unreported income.

On or around January 2011 the IRS commenced audits of returns of one or more of the Companies. Petitioner, as a shareholder of the Companies, was notified of the IRS audits. On August 15, 2011, an IRS revenue agent (RA) interviewed the Companies' president, and then on August 26, 2011, the RA separately interviewed the Companies' six shareholders (excluding petitioner), along with their respective spouses. According to the separately interviewed shareholders, cash funds were being skimmed from the Companies and distributed to all shareholders. Also, according to the shareholders interviewed, it was petitioner who handled these cash distributions since he was involved in the financial operations of the Companies. The RA subsequently met with the Companies' bookkeeper on September 29, 2011, and later held several meetings with petitioner regarding the Companies' audits.

The IRS ultimately proceeded with the assessment of additional federal income tax and employment taxes against the Companies and their shareholders. The assessments exceeded $2 million dollars and were directly related to the unreported income and payroll tax issues petitioner identified. The assessed additional taxes, including interest and penalties, have been paid.

In 2014 petitioner sought appeal to the IRS Office of Appeals (Appeals Office)[5] protesting the proposed tax deficiencies for the Companies, as determined by the IRS, as being too low since the assessments failed to include other sources of unreported income. Ultimately, the Appeals Office declined to accept petitioner's appeal

_____

[5] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the Office of Appeals or Appeals.

[*4] based on his protest disagreeing with the IRS audit findings and seeking an increase in the proposed tax deficiency amounts.

On or about August 29, 2018, the WBO sent petitioner a preliminary award recommendation letter. The purpose of the letter was to seek petitioner's agreement or disagreement with the preliminary award recommendation, as determined by the WBO. Enclosed with the WBO's letter was a summary report explaining the preliminary award recommendation of $368,289. Also enclosed was a response form and a confidentiality agreement for petitioner to sign and return to the WBO.

The WBO also sought the IRS's input in making petitioner's preliminary award recommendation. The IRS furnished the WBO a report written by the RA who handled the Companies' audits. The RA completed several Forms 11369, Confidential Evaluation Report on Claim for Award, one related to each of petitioner's whistleblower claims.[6] In her report to the WBO, the RA generally reflected petitioner's actions and cooperation during the Companies' audits. Her report to the WBO states that "throughout the audit [petitioner] has fully cooperated with the IRS in providing additional documents and analyzing the documents."

Furthermore, the RA's report to the WBO notes that the RA

believe[s] that if [petitioner] had not filed a 211 claim his siblings would have not filed a voluntary disclosure and provided the documents and cooperation necessary for the government to determine the correct adjustments. Therefore I believe that [petitioner] took the first step that led to this examination that allowed the government to collect more than $2 million dollars in taxes, penalties and interest.

On or about September 25, 2018, petitioner signed the response form and the confidentiality agreement and returned the forms to the WBO, indicating that he wanted to receive "a more detailed explanation of the award recommendation . . . ."

In response to petitioner's request, by letter dated December 6, 2018, the WBO furnished petitioner a two-page memorandum entitled

---

[6] Although the RA completed a Form 11369 for each claim number, the completed forms, and the attached memorandums, were identical other than the target taxpayer information portions of the forms.

[*5] "Detailed Report." The detailed report was broken into five parts: (1) petitioner's submission to the WBO, (2) the actions taken by the IRS audit team based on the information furnished, (3) the proceeds collected on the basis of information received from petitioner, (4) the award percentage analysis performed by the WBO, and (5) the determination of the proposed award amount. Within the detailed report, the WBO outlined its analysis in determining petitioner's award percentage. The detailed report states, in relevant part:

> The information provided identified taxpayer behavior that the IRS was unlikely to identify or that was particularly difficult to detect through the IRS's exercise of reasonable diligence. The WB provided information that the TP underreported income and unreported payroll to reduce their U.S. tax burden . . . [t]he WB also provided documentation which supported their allegation.

The detailed report also states, in relevant part:

> The whistleblower delayed informing the IRS after learning the relevant facts, particularly if the delay adversely affected the IRS's ability to pursue an action or issue. As an operation manager of the [redacted Corporation 5] most likely the WB was aware of the activities in 2006, however he did not report the actions to the IRS until 2009 after being fired from the company.

The WBO's preliminary award recommendation was based, in part, on an internal memorandum[7] prepared by a WBO employee. In the internal memorandum, the WBO employee outlined the background of petitioner's claim and made a basis for her award recommendation to the WBO director. In part, the WBO employee stated in the memorandum:

> The WB brought new information during the examination that allowed the exam team to show unreported income from [redacted Corporation 4]. The unreported income computations were based on kill sheets signed the United

---

[7] The record contains three internal award recommendation memorandums for the WBO director, dated June 15, 2018, August 15, 2018, and December 6, 2019, respectively. The memorandums are nearly identical and contain much the same explanation. The memorandums are updates to the earlier draft, and the final version includes a summary of petitioner's responses to the WBO.

**[*6]**  States Department of Agriculture (USDA). The RA did a third-party contact to the USDA to get the kill sheets. The RA prepared a spreadsheet showing what gross receipts should be if the government used the total number of chickens slaughtered per USDA records and average sales prices and average purchase price provided by the WB.

In summary, the WB didn't hand the adjustment to the Service. The Service still had to take the appropriate audit steps to calculate the correct unreported income and unreported payroll. As a shareholder and manager of the business, the WB was most likely aware of the fraudulent activities and participated in the accumulation of cash. According to the WB, he never participated in these activities and he was not aware the cash accumulation and underreporting of income. During the examination, [redacted Taxpayer 2] and the other 5 siblings state that the WB had full knowledge of the fraudulent activities conducted in the business and participated in the cash skimming operations.

The WBO's internal memorandum also outlines positive and negative factors of petitioner's whistleblower claim. Positive factors include: (i) "[t]he information provided identified taxpayer behavior that the IRS was unlikely to identify or that was particularly difficult to detect through the IRS' exercise of reasonable diligence" and (ii) "[t]he WB provided information that the TP underreported income and unreported payroll to reduce their U.S. tax burden . . . this information led the examiner to review this particular item which saved resources. The WB also provided documentation which supported their allegation. This again saved resources and led the examiner to specific accounts."

The negative factors include: (i) "as an operation manager of the [Companies] most likely the WB was aware of the activities in 2006, however he did not report the actions to the IRS until 2009 after being fired from the company"; and (ii) "as a shareholder and manager of the [Companies] most likely the WB should be aware of the fraudulent activities and participated in the accumulation of cash. The WB acknowledges receipt of cash in 2008, but he never used the cash. Receipt of cash should have been reported on his own tax return. It's not relevant that he didn't spend the cash."

**[*7]**     Finally, the WBO's internal memorandum, in their discussion of negative factors, stated that

> [t]he WB directly or indirectly profited from the underpayment of tax or noncompliance identified but did not plan or initiate the actions. The WB clearly benefits through the cash received and the underreported income and payroll taxes. His flow through income from the S Corp. was understated.

With the WBO's letter dated December 6, 2018, and detailed report, the WBO also furnished petitioner with a "Response to Detailed Report" form giving petitioner three choices. One gave petitioner the option to schedule an appointment to review the supporting documents at the WBO in Washington, D.C. Petitioner exercised this option and traveled to Washington, D.C., and examined the supporting documents on October 23, 2019. By letter dated November 21, 2019, petitioner then provided a detailed response disputing the WBO's preliminary award recommendation. Petitioner's detailed response included a two-page cover letter, a 118-page written response, and 18 attachments, which totaled approximately 908 pages.

The WBO received petitioner's comments and made a final determination under section 7623(b), dated December 16, 2019, determining that petitioner was entitled to an award percentage of 15%. The calculated award amount was based on the taxes, penalties and other amounts collected by the IRS from the Companies and their shareholders. In the final determination, the WBO stated:

> The Whistleblower Office has considered your Form 211(s), Application for Award for Original Information, dated 02/24/2009, this includes any additional information you may have provided in relation to the Form 211. On August 29, 2018, the Whistleblower Office sent you a preliminary award recommendation. The Whistleblower Office reviewed the comments you provided on the preliminary award recommendation. The Whistleblower Office has made a final decision that you are entitled to an award of $371,04[9] under Internal Revenue Code (IRC) section 7623(b). The enclosed Determination Report explains the determination and the calculation of the award.

**[*8]** The final determination also included a one-page determination report consisting of six numbered paragraphs. First, the determination report listed the total taxes, penalties, and interest the IRS collected using information petitioner provided. Next, the determination report determined an award percentage of 15%, a gross proceeds award of $394,313, a Budget Control Act reduction of 5.9% for the 2020 fiscal year of $23,264, and a determined award amount made under section 7623(b) of $371,085. Finally, the determination report included a statement regarding the factors that contributed to the recommended award percentage as follows: "The positive factors were applicable, however they didn't have sufficient impact to warrant an increase of the award % above 15% after considered the negative factors." The final determination also included a "Waiver of Appeal" and explained to petitioner that he would need to waive his appeal rights under section 7623 from the determination of the WBO dated December 16, 2019, whereby the WBO would process the award amount for payment.

On January 13, 2020, petitioner timely appealed the WBO's determination to this Court pursuant to section 7623(b)(4). On April 6, 2020, respondent filed his Answer to petitioner's Petition.

On the basis of good cause shown at the hearing the Court found that the administrative record, as submitted by respondent, was incomplete.[8] The Court also found petitioner's testimony and the evidence he furnished sufficiently compelling to establish that the additional proposed trial Exhibits petitioner filed (201-P through 439-P) are also part of the administrative record in this case. Consequently, at the hearing the Court admitted the proposed joint trial Exhibits, as well as petitioner's additional proposed trial Exhibits, which are now collectively deemed the complete administrative record in this case.

*Discussion*

I.    *Summary Judgment*

A.    *Background*

In his Motion for Summary Judgment petitioner advances the same arguments as those found in his Petition. First, he alleges a multitude of problems with the audits that gave rise to the total proceeds upon which his award was based. Second, petitioner argues

---

[8] In instances of "good cause" shown, we will allow the administrative record to be supplemented. *See Kasper v. Commissioner*, 150 T.C. 8, 21 (2018).

[*9] that the WBO erroneously incorporated negative factors in its award percentage analysis using inaccurate facts. Third, petitioner contends that the IRS personnel assigned to the audits underlying the award determination failed to complete their due diligence regarding the facts in the case.

In his written Response respondent counters petitioner's arguments regarding shortcomings in the underlying audits and argues that petitioner's arguments fail as a matter of law since section 7623(b)(4) does not confer on us jurisdiction to review the IRS's decision to audit a tax return on the basis of the whistleblower's tip. Second, respondent argues that petitioner has, for the first time, contended that he did not have knowledge of the target taxpayers' underreporting despite opportunities to present such information to the WBO. Thus, respondent argues that petitioner is now raising new arguments not made before the WBO and that the WBO did not abuse its discretion and properly relied upon the information at its disposal to determine the award percentage.

In his Reply petitioner argues that he does, in fact, dispute the amount awarded because the "source information" is incorrect. Petitioner avers that he disputed the entirety of the preliminary award determination, and therefore the WBO's application of negative factors. He states that the WBO did not furnish its internal award recommendation memorandum and it was not until this proceeding that the document was first disclosed. Petitioner also argues that the WBO's application of negative factors was improperly based on the self-serving testimony of his fellow shareholders whom he blew the whistle on and therefore their testimony offers little credibility.

In his Motion for Summary Judgment petitioner contends that he discovered that his IRS whistleblower award recommendation was based on the IRS's audit of the target taxpayers. Petitioner also contends that portions of the administrative record relating to the IRS auditors' and group managers' work papers remain missing. Specifically, petitioner also contends that the IRS violated the Internal Revenue Manual (IRM) and section 7214 by not issuing a Form 11369 transfer memo and purposefully hiding relevant information regarding his

**[\*10]** claims.[9] However, representations by respondent indicate that no such completed form exists in this case.

Also in his Motion for Summary Judgment, petitioner contends that the negative factors the WBO listed against him are based on false speculation. Petitioner contends that he was unaware of any fraudulent activities being conducted by the Companies' other shareholders. He likewise disputes the IRS's reliance on the shareholders' statements, as self-serving hearsay. Finally, petitioner directs us to court documents, including declarations and depositions, to establish that he did not participate in or have knowledge of the abovementioned fraudulent activities.

Respondent also filed a Supplemental Response to petitioner's Motion for Summary Judgment. In his Supplemental Response, respondent contends that the WBO explained itself in its final determination and moreover in the WBO's internal award recommendation memorandum. According to respondent, it is petitioner who has failed to establish that he is entitled to judgment as a matter of law with respect to the negative factors the WBO relied on to decrease his award percentage.

Although respondent has not filed a cross-motion for summary judgment, he contends the administrative decision of the WBO should be affirmed. Therefore, under the circumstances we will recharacterize as a cross-motion for summary judgment respondent's Response and Supplemental Response. *See Klein*, 149 T.C. at 343. Having considered the parties' arguments, as well as the administrative record, we are now prepared to decide this matter.

B.    *Applicable Law*

Pursuant to section 7623(a) Congress has authorized the Secretary (and his designee), under prescribed regulations, to pay discretionary whistleblower awards for detecting underpayments of tax or detecting and bringing to trial and punishment persons guilty of

---

[9] The provisions of the IRM can be instructive in understanding the IRS's interpretation of a statute, *see Ginsburg v. Commissioner*, 127 T.C. 75, 87 (2006), and in ascertaining the procedures the IRS expects its employees to follow, *see Wadleigh v. Commissioner*, 134 T.C. 280, 294 (2010). The IRM does not, however, have the force of law. *See Marks v. Commissioner*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991), *aff'g* T.C. Memo. 1989-575; *Vallone v. Commissioner*, 88 T.C. 794, 807 (1987).

**[\*11]** violating the internal revenue laws.[10] The amount payable is to be paid from the proceeds of the amounts collected. *Id.* Proceeds include tax, penalties, interest, additions to tax, and any proceeds arising from laws which the IRS is authorized to administer and enforce, including criminal fines and forfeitures. I.R.C. § 7623(c).

When the Secretary proceeds with any administrative or judicial action using information furnished by the whistleblower, such an individual is entitled to receive an award of at least 15%, but not more than 30%, of the proceeds collected. I.R.C. § 7623(b)(1).[11] The determination of the amount of such an award—as made by the WBO—depends on "the extent to which the individual substantially contributed to such action." *Id.* However, if the WBO determines that the claim for an award is brought by an individual who planned and initiated the actions that led to the underpayment of tax, then the WBO may appropriately reduce the award; and if the individual is convicted of criminal conduct arising from the planned and initiated actions, the WBO is required to deny any award. I.R.C. § 7623(b)(3).

---

[10] The IRS has long had authority to pay discretionary awards to persons, now called "whistleblowers," who provide information leading to the recovery of unpaid taxes. *See* I.R.C. § 7623. In response to concerns about the management of the discretionary award regime, Congress enacted legislation in 2006 to address perceived problems with the whistleblower program. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 406, 120 Stat. 2922, 2958 (effective Dec. 20, 2006). The 2006 legislation added to section 7623 a new subsection (b), which requires the payment of nondiscretionary whistleblower awards in specified circumstances and provides this Court jurisdiction to review IRS determinations regarding such awards. *See Cooper v. Commissioner*, 135 T.C. 70, 73 (2010).

[11] While not the case here,

> [i]n the event the action described in [section 7623(b)(1)] is one which the Whistleblower Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in [section 7623(b)(1)]) resulting from a judicial or administrative hearing, from a governmental report, hearing, audit, or investigation, or from the news media, the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary), taking into account the significance of the individual's information and the role of such individual and any legal representative of such individual in contributing to such action.

*See* I.R.C. § 7623(b)(2)(A).

**[\*12]** In section 7623(b), Congress makes whistleblower awards mandatory if certain requirements are met. Some of the requirements are that the proceeds in dispute exceed $2 million and that for any targeted individual, his or her gross income exceed $200,000 for the taxable year subject to such action. I.R.C. § 7623(b)(5). In this case the proceeds collected exceeded $2 million and some of the targeted taxpayers were companies and not individuals; therefore, petitioner is entitled to a minimum award of 15%.[12]

While Congress provides for a mandatory award for information brought by a whistleblower, ultimately the award amount is left to the IRS since Congress has provided an award range of 15% to 30% dependent upon the level to which the whistleblower "substantially contributed" to the actions by the IRS. *See* I.R.C. § 7623(b).

A party may move for summary judgment regarding all or any part of the legal issues in controversy. *See* Rule 121(a); *Wachter v. Commissioner*, 142 T.C. 140, 145 (2014). Ordinarily, under our Rules, we may grant summary judgment if the pleadings, stipulations and exhibits, and any other acceptable materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. *See* Rule 121(a) and (b); *see also CGG Americas, Inc. v. Commissioner*, 147 T.C. 78, 82 (2016); *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002).

However, we have recently observed in an analogous setting involving whistleblower claims that

> [T]his summary judgment standard is not generally apt where we must confine ourselves to the administrative record to decide whether there has been an abuse of discretion. . . . [I]n a "record rule" whistleblower case there will not be a trial on the merits. In such a case involving review of final agency action under the [Administrative Procedure Act], summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

---

[12] Section 7623(b)(3) is not relevant in this case.

**[\*13]** *Van Bemmelen v. Commissioner*, 155 T.C. 64, 78–79 (2020). Applying this principle, we may decide through summary judgment, on the basis of the administrative record before us, whether the WBO's determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

According to that standard we confine ourselves to ensuring that the determination remained within the bounds of reasoned decision making. *Id.* at 72. Our scope of review in whistleblower cases is based on the administrative record with limited exceptions. *Kasper*, 150 T.C. at 20–21. Remand to the WBO for further administrative proceedings may be appropriate in certain whistleblower cases under section 7623(b). *See Whistleblower 769-16W v. Commissioner*, 152 T.C. 172 (2019).

Our task is to review the award determination by the WBO. I.R.C. § 7623(b)(4). Under the *Chenery* doctrine we uphold the WBO's determination on the grounds it actually relied on when making its determination. *See Kasper*, 150 T.C. at 23. The *Chenery* doctrine is an administrative law principle that says that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (describing its holding in *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).[13]

II.    *Analysis*

Subsection (b)(4) of section 7623 gives us exclusive jurisdiction to review "[a]ny determination regarding an award" under subsection (b)(1)–(3). *See Li v. Commissioner*, 22 F.4th 1014, 1017 (D.C. Cir. 2022).

Section 7623(b)(4) does not grant us jurisdiction over decisions by the IRS in its conduct of audits or collection activities. *Cohen v. Commissioner*, 139 T.C. 299, 302 (2012), *aff'd*, 550 F. App'x 10 (D.C. Cir. 2014). As we have explained, "although Congress authorized the Court to review the Secretary's award determination, Congress did not authorize the Court to direct the Secretary to proceed with an

---

[13] Applying the *Chenery* doctrine we have said the WBO must clearly set forth the grounds on which it made its determination, and we cannot uphold the WBO's determination "simply because findings *might* have been made and considerations *might* be disclosed which *might* justify his ultimate conclusion." *Kasper*, 150 T.C. at 23–24 (quoting *Antioco v. Commissioner*, T.C. Memo. 2013-35, at \*25).

[*14] administrative or judicial action." *Cooper v. Commissioner*, 136 T.C. 597, 600 (2011).

Therefore, petitioner's first and third arguments in his Motion for Summary Judgment fail as a matter of law. *See id.* at 600–01. Petitioner's contention that the WBO should have requested that the IRS further audit the target taxpayers is extraneous, because we lack the authority to require the WBO or IRS to take further action.

Petitioner also cites section 7214 as being violated by the IRS in his case. Section 7214 imposes a penalty on any IRS employees—acting in their official capacity—who commit an enumerated offense. The penalty is dismissal from office or discharge from employment and, upon conviction thereof, a fine of not more than $10,000, imprisonment for not more than five years, or both. *See* I.R.C. § 7214(a). This Code provision has no application here. To the extent petitioner attempts to state a claim under section 7214, it affords no private right of action, and we are without jurisdiction to hear such a claim. *See, e.g.*, *Orion Contracting Tr. v. Commissioner*, T.C. Memo. 2006-211; *Rice v. Commissioner*, T.C. Memo. 1978-334; *Strong v. United States*, No. CIV A 6:98-1452, 1998 WL 990581 (W.D. La. Dec. 10, 1998). Accordingly, we will limit our analysis to any alleged error(s) with respect to the WBO's award determination.

In general, our prior reviews of WBO actions have been focused on the necessary questions of our jurisdiction and the scope of our review (if any) in circumstances of WBO "rejections" or "denials." *See, e.g.*, *Whistleblower 21276-13W v. Commissioner*, 147 T.C. 121 (2016); *see also Li v. Commissioner*, 22 F.4th at 1017. In this case we are tasked with the more traditional function of reviewing the appropriateness of the WBO's award determination and petitioner's subsequent appeal of the WBO's final determination. I.R.C. § 7623(b)(4).

Under the administrative proceedings for award determinations the WBO is to prepare a preliminary award recommendation to the whistleblower by sending

>    (i) A preliminary award recommendation letter that describes the whistleblower's options for responding to the preliminary award recommendation;
>    (ii) A summary report that states a preliminary computation of the amount of collected proceeds, the recommended award percentage, the recommended award amount (even in cases when the application of section

**[\*15]** 7623(b)(2) or section 7623(b)(3) results in a reduction of the recommended award amount to zero), and a list of the factors that contributed to the recommended award percentage;

>(iii) An award consent form; and

>(iv) A confidentiality agreement.

Treas. Reg. § 301.7623-3(c)(2).

The whistleblower has 30 days from the date the WBO sends the preliminary award recommendation letter to respond in one of the following ways:

>(i) If the whistleblower takes no action, then the Whistleblower Office will make an award determination, pursuant to paragraph (c)(6) of this section;

>(ii) If the whistleblower signs, dates, and returns the award consent form agreeing to the preliminary award recommendation and waiving any and all administrative and judicial appeal rights, then the Whistleblower Office will make an award determination, pursuant to paragraph (c)(6) of this section;

>(iii) If the whistleblower signs, dates, and returns the confidentiality agreement, then the Whistleblower Office will provide the whistleblower with a detailed award report, and an opportunity to review documents supporting the report pursuant to paragraphs (c)(4) and (5) of this section, and any comments submitted by the whistleblower will be added to the administrative claim file; or

>(iv) If the whistleblower submits comments on the preliminary award recommendation to the Whistleblower Office, but does not sign, date, and return the confidentiality agreement, then the comments will be added to the administrative claim file and reviewed by the Whistleblower Office in making an award determination, pursuant to paragraph (c)(6) of this section.

*Id*. subpara. (3).

The whistleblower (and the whistleblower's legal representative, if any) has the opportunity to review information from the administrative claim file (not protected from disclosure by one or more common law or statutory privileges) supporting the award report

**[\*16]** recommendation at the WBO's office in Washington, D.C. Treas. Reg. § 301.7623-3(c)(5). At the appointment, the WBO will provide for viewing the information from the administrative claim file; however, the whistleblower is not permitted to make copies of any documents or other information. *Id.* The whistleblower will then have 30 days from the date of the appointment to submit comments on the detailed report and the documents reviewed at the appointment to the WBO. All comments will be added to the administrative claim file and reviewed by the WBO in making an award determination. *Id.*

After participation in the whistleblower administrative proceeding has concluded and there is a final determination of tax (as defined in Treasury Regulation § 301.7623-4(d)(2)), the WBO will determine the amount of the award under section 7623(b)(1), (2), or (3), and Treasury Regulation §§ 301.7623-1 through 301.7623-4, on the basis of the WBO's review of the administrative claim file. Treas. Reg. § 301.7623-3(c)(6).[14]

As referenced above, the WBO is to analyze an individual's claim by applying the rules provided in Treasury Regulation § 301.7623-4(c) to the information in the administrative claim file to determine an appropriate award percentage. *Id.* para. (a)(1). The WBO is required to consider all relevant factors in determining whether an award will be paid, and if so, the amount of the award. *Id.* subpara. (2).

The regulations provide a list of factors to help determine the whistleblower's award percentage. *See* Treas. Reg. § 301.7623-4(b). The WBO is to apply the following nonexclusive factors to support increasing an award percentage:

(i) The whistleblower acted promptly to inform the IRS or the taxpayer of the tax noncompliance.
(ii) The information provided identified an issue or transaction of a type previously unknown to the IRS.
(iii) The information provided identified taxpayer behavior that the IRS was unlikely to identify or that was

---

[14] The WBO is to communicate the award to the whistleblower in a final determination letter by stating the amount of the award. If, however, the whistleblower has executed an award consent form agreeing to the amount of the award and waiving the whistleblower's right to appeal the award determination to this Court, then the WBO will not send the whistleblower a final determination letter and will make payment of the award as promptly as circumstances permit. Treas. Reg. § 301.7623-3(c)(6).

17

**[\*17]** particularly difficult to detect through the IRS's exercise of reasonable diligence.

(iv) The information provided thoroughly presented the factual details of tax noncompliance in a clear and organized manner, particularly if the manner of the presentation saved the IRS work and resources.

(v) The whistleblower (or the whistleblower's legal representative, if any) provided exceptional cooperation and assistance during the pendency of the action(s).

(vi) The information provided identified assets of the taxpayer that could be used to pay liabilities, particularly if the assets were not otherwise known to the IRS.

(vii) The information provided identified connections between transactions, or parties to transactions, that enabled the IRS to understand tax implications that might not otherwise have been understood by the IRS.

(viii) The information provided had an impact on the behavior of the taxpayer, for example by causing the taxpayer to promptly correct a previously-reported improper position.

*Id.* subpara. (1). Similarly, the WBO is to apply the following nonexclusive factors to support decreasing an award percentage:

(i) The whistleblower delayed informing the IRS after learning the relevant facts, particularly if the delay adversely affected the IRS's ability to pursue an action or issue.

(ii) The whistleblower contributed to the underpayment of tax or tax noncompliance identified.

(iii) The whistleblower directly or indirectly profited from the underpayment of tax or tax noncompliance identified, but did not plan and initiate the actions that led to the underpayment of tax or actions described in section 7623(a)(2).

(iv) The whistleblower (or the whistleblower's legal representative, if any) negatively affected the IRS's ability to pursue the action(s), for example by disclosing the existence or scope of an enforcement activity.

(v) The whistleblower (or the whistleblower's legal representative, if any) violated instructions provided by the IRS, particularly if the violation caused the IRS to expend additional resources.

**[*18]**    (vi) The whistleblower (or the whistleblower's legal representative, if any) violated the terms of the confidentiality agreement described in [Treas. Reg.] § 301.7623-3(c)(2)(iv).

(vii) The whistleblower (or the whistleblower's legal representative, if any) violated the terms of a contract entered into with the IRS pursuant to [Treas. Reg.] § 301.6103(n)-2.

(viii) The whistleblower provided false or misleading information or otherwise violated the requirements of section 7623(b)(6)(C) or [Treas. Reg.] § 301.7623-1(c)(3).

Treas. Reg. § 301.7623-4(b)(2).

Treasury Regulation § 301.7623-4(c)(1)(i) provides that

[i]f the IRS proceeds with any administrative or judicial action based on information brought to the IRS's attention by a whistleblower, such whistleblower shall, subject to paragraphs (c)(2) and (3) of this section, receive as an award at least 15 percent but not more than 30 percent of the collected proceeds resulting from the action (including any related actions) or from any settlement in response to such action. The amount of any award under this paragraph depends on the extent of the whistleblower's substantial contribution to the action(s).

This regulation further provides that "[s]tarting the analysis at 15 percent, the Whistleblower Office will analyze the administrative claim file using the factors listed in paragraph (b)(1) of this section to determine whether the whistleblower merits an increased award percentage of 22 percent or 30 percent." Treas. Reg. § 301.7623-4(c)(1)(ii). Accordingly, the WBO may increase the award percentage on the basis of the presence and significance of any positive factors. *Id.*

Next, the WBO will analyze the contents of the administrative claim file using the enumerated negative factors to determine whether the whistleblower merits a decreased award percentage of 15%, 18%, 22%, or 26%. *Id.* Accordingly, the WBO may decrease the award percentage on the basis of the presence and significance of any negative factors. *Id.*

**[*19]** The WBO furnished petitioner a preliminary award determination as required. Next, upon the request of petitioner, the WBO furnished a detailed report and then permitted petitioner to inspect the WBO's supporting documents. The WBO received petitioner's response to the preliminary findings and then issued a final determination under section 7623(b). The WBO's findings are set forth in its written final determination letter dated December 16, 2019.

In this case the WBO's determination of award concluded there were both positive and negative factors present in calculating petitioner's award. First, the WBO increased petitioner's award from the minimum 15% to 22% on account of the existence of positive factors. Next, however, the WBO applied negative factors and reduced petitioner's award to the minimum 15% award percentage. Below we will further discuss our conclusions on this matter.

### A. *The WBO's Award Calculation*

The determination report, which was included with the WBO's final determination, reflects an award amount of $371,049. This award determination is also calculated in the detailed report furnished to petitioner by letter dated February 20, 2019.

The total award due of $394,313 is 15% of the proceeds collected by the IRS from the target taxpayers. In a three-page Excel spreadsheet, the WBO listed the amounts, taxpayer identification numbers, tax periods, and dates of payment for all taxes, penalties, and interest received. The total amount recovered, per the WBO Excel spreadsheet, is $2,628,755. Petitioner does not appear to dispute the total amount collected, as calculated by the IRS.

The adjustment to the total award due of $394,313 is then adequately documented and explained by the WBO. The WBO explains how under the Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, the award amount is required to be reduced by a sequestration percentage determined annually by the Office of Management and Budget (OMB).[15] The WBO's final determination

---

[15] Sequestration is a measure by which Congress enforces mandatory spending cuts across most government programs and agencies during the budgetary process. Sequestration applies to all nonexempt direct spending when Congress fails to enact certain budgetary legislation for the fiscal year. Budget Control Act of 2011, Pub. L. No. 112-25, §§ 101–103, 125 Stat. 240, 241–46, as amended by American Taxpayer

**[\*20]** correctly explains how payments in excess of $10,000 are subject to a federal income tax withholding amount,[16] reflecting a net payment amount (after withholdings) to be received by petitioner. We conclude the WBO has correctly calculated petitioner's award amount.

B.  *Application of Positive Factors*

The record reflects the WBO's process in determining that two positive factors existed, with the first positive factor being how the information petitioner furnished was previously unknown to the IRS, and second, that the information petitioner furnished identified behavior that the IRS was unlikely to identify or was difficult to detect by reasonable diligence. *See* Treas. Reg. § 301.7623-4(b)(1)(ii) and (iii).

The WBO's award recommendation memorandum concludes these positive factors increase petitioner's percentage award from the minimum 15% to 22% as permitted under the regulations. *See* Treas. Reg. § 301.7623-4(c)(1)(ii). Under section 7623, an individual's award percentage depends on to "the extent to which [he] substantially contributed to" the actions of the IRS against the target taxpayers. *See* I.R.C. § 7623(b)(1). In this case the WBO analyzed the administrative claim file and, using the information presented, it determined petitioner's award percentage. *See* Treas. Reg. § 301.7623-4(a)(1). The WBO then multiplied the award percentage by the amount of collected proceeds. *Id*. subpara. (2).

While the WBO fails to elaborate in great detail its conclusion to arrive at a 22% tentative award percentage, rather than 30% (before reduction) based on petitioner's substantial contribution, we do not conclude the WBO's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in making this determination. *See* Treas. Reg. § 301.7623-4(c)(ii). Petitioner does not

---

Relief Act of 2012, Pub. L. No. 112-240, § 901, 126 Stat. 2313, 2370 (codified as amended at 2 U.S.C. § 901(a) (2012)). The applicability of the sequestration and the sequestration percentage are determined on the basis of the government fiscal year when the award is paid. The OMB calculates the sequestration percentage for each fiscal year following the procedures set forth by statute. *See* 2 U.S.C. § 901(a).

[16] The WBO correctly notified petitioner—in the preliminary and final determinations—that his award is includible in gross income under section 61 and subject to federal tax reporting and backup withholding requirements by the WBO in the year of payment. The WBO correctly notified petitioner that his award will be subject to a 24% backup withholding and may be offset against any outstanding federal income tax liabilities that he has.

[*21] appear to dispute the foregoing positive factors and tentative award percentage increase (from 15% to 22%). Furthermore, petitioner has not asserted that the WBO failed to include other relevant positive factors.

Our conclusion as to the WBO's proper application of positive factors is based on the WBO's application of this regulation and the discretion given to the WBO in making its award percentage determination. *See* Treas. Reg. § 301.7623-4(b)(1). Our conclusion is also confirmed by petitioner, who has not disputed this portion of the WBO's award percentage calculation. Accordingly, we conclude the WBO has adequately addressed all relevant positive factors in determining petitioner's award percentage. *See id.*

C.     *Application of Negative Factors*

As mentioned, the record reflects that the WBO concludes there are two negative factors present in petitioner's claim. First, the WBO determined petitioner delayed in informing the IRS after learning of the relevant facts and particularly how the delay adversely affected the IRS's ability to pursue an action or issue. *See* Treas. Reg. § 301.7623-4(b)(2)(i). Second, the WBO determined petitioner contributed to the underpayment of tax or noncompliance identified. *See id.* subdiv. (ii).

In his original application for award petitioner explains his limited role and involvement in the Companies and, upon his subsequent discovery of the tax scheme, how he was essentially prohibited from questioning the Companies' operations by the other shareholders. However, the WBO appears to ultimately rely on statements by the RA to conclude there are two negative factors on the "most likely" facts of this case. The RA furnished a seven-page memorandum analyzing petitioner's involvement in the Companies and their skimming operations, as well as the information petitioner furnished and its use to the RA during her audit. Along with the memorandum, the RA identically completed Form 11369 for each of petitioner's claims, indicating how "the information provided led to adjustments in the audit . . . such as expanding the scope of transactions to be examined." On the Forms 11369 the RA also indicated that four favorable factors existed with respect to petitioner's contributions and six factors were not applicable (or did not exist). Finally, with respect to "other information" the RA marked "yes" the following additional factor:

[*22] (A) "Did the whistleblower participate in the actions that led to the underpayment of tax."

The record before us reflects that petitioner may have contributed to the underpayment of tax or participated in the actions which led to the underpayment of tax. We acknowledge how petitioner blew the whistle on the Companies' actions and its shareholders upon his discovery of tax noncompliance. However, the record also reflects how petitioner failed to promptly notify the IRS of the tax noncompliance after learning of the relevant facts. We also find there to be material analysis performed by the WBO explaining its conclusion in arriving at a minimum 15% award percentage for petitioner. In sum, there is sufficient evidence supporting the two negative factors applied by the WBO.

Our task here is to review the agency determination and to uphold it unless we find the WBO's final determination to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Here it cannot be said that the IRS's records do not support the WBO's conclusions. While petitioner contends at length that there are additional facts refuting his involvement in and knowledge of the tax noncompliance scheme, we decline to go behind the WBO's determination and second-guess the conclusion reached, since these same contentions by petitioner were considered and rejected by the WBO.

In our review we are unable to conclude that the WBO acted arbitrarily, capriciously, with abuse of discretion, or otherwise not in accordance with law in applying the negative factors under Treasury Regulation § 301.7623-4(b) in accordance with the discretion given to it in making its award percentage determination. Accordingly, we conclude the WBO has adequately addressed all relevant negative factors in determining petitioner's award percentage.

III.  *Conclusion*

The record before us reflects how the WBO relied on evidence found in the administrative record in making its award determination. The record also reflects how the WBO considered relevant positive and negative factors in making its award determination. Finally, the record reflects that the WBO followed proper administrative procedures and considered petitioner's arguments. Thus, we conclude petitioner has failed to show that the WBO's action in making its final determination

**[\*23]** was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

We will deny petitioner's Motion for Summary Judgment, grant respondent's Cross-Motion for Summary Judgment, and enter a decision affirming the WBO's final determination under section 7623(b), dated December 16, 2019.

To reflect the foregoing,

*An appropriate order and decision will be entered.*